LISA GUSSIN, Plaintiff–Appellant, v. DANIEL A. GUSSIN, Respondent–Appellee

NO. 14966

(FC–D NO. 89–0721)

SEPTEMBER 1, 1992

LUM, C.J., WAKATSUKI, MOON, KLEIN, AND LEVINSON, JJ.

472

## OPINION OF THE COURT BY MOON, J.

We granted certiorari to review the Intermediate Court of Appeals's (ICA) affirmance of a portion of the divorce decree, entered by the Family Court of the First Circuit, relating to the division and distribution of the approximately $820,000 estate of petitioner–appellant Lisa Gussin (Wife) and respondent–appellee Daniel A. Gussin (Husband), pursuant to Hawaii Revised Statutes (HRS) § 580–47. In her application for a writ of certiorari, Wife contends that the ICA erred in 1) rejecting her transmutation theory and determining that there was no evidence that Husband gifted certain of his separate properties to Wife or to the estate of the

parties during the marriage; 2) affirming the family court's division of during-the-marriage appreciation of Husband's separate property at 85% to Husband and 15% to Wife; and 3) affirming the family court's use of an inflation factor, based on the Consumer Price Index, as to Husband's separate property, which inequitably increased Husband's portion of the estate.

We also review, pursuant to Hawaii Rule of Appellate Procedure (HRAP) 31(e)(4)(A),[1] the ICA's mandate that family courts' division and distribution of the estates of parties in divorce proceedings must commence at "uniform starting points" (USPs). Following our review of the law in this jurisdiction, we hold as a general matter that USPs, as mandated by the ICA, restrict the family court's discretion in violation of HRS § 580–47. Based on our review of the record in this case, we conclude that the ICA's mandate restricted the family court's discretion, and we are thus compelled to vacate the portions of the divorce decree relating to the division and distribution of the marital appreciation derived from Husband's separate property. Additionally, we conclude that the ICA erred in holding as a matter of law that there was no evidence of gift by Husband to Wife or to the marital estate during the marriage. We therefore remand this case for further proceedings consistent with this opinion.

## I. BACKGROUND

The parties in this case were married on May 6, 1983, separated on February 23, 1989, and divorced on January 17, 1991. There was one child born of the marriage on November 14, 1986. The estate of the parties subject to division and distribution was valued at approximately $820,000.00. In dividing and distributing

---

[1] HRAP 31(e)(4)(A) provides in pertinent part: "The statement of a question presented [for decision] will be deemed to include every subsidiary question fairly comprised therein. Questions not presented according to this paragraph will be disregarded. The court, at its option, may notice a plain error not presented."

the parties' estate, the family court utilized categories of property, the property's net market value (NMV), and USPs developed and mandated by the ICA in its prior cases.

> The ICA's five–category classification of property and "property net market values" took the ownership, the time of acquisition, the manner of acquisition, and the during–marriage increase in the value of marital assets into account and designated "uniform starting points" (USP) from which the family court's "equitable distribution analysis and application of statutory and case law mandates[]" should begin.

*Myers v. Myers*, 70 Haw. 143, 150, 764 P.2d 1237, 1242 (1988) (citing *Hashimoto v. Hashimoto*, 6 Haw. App. 424, 426, 725 P.2d 520, 522 (1986)) (footnotes omitted), *recon. denied*, 70 Haw. 661, 796 P.2d 1004 (1988). The five categories are:

> Category 1. The net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
> Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the [date of the conclusion of the evidentiary part of the trial (DOCOEPOT)].
> Category 3. The date–of–acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.

Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3 and 4.

*Malek v. Malek*, 7 Haw. App. 377, 380–81 n.1, 768 P.2d 243, 246 n.1 (1989).

The USPs for dividing the NMVs under the various categories are as follows:

| Categories | Percentage |
| --- | --- |
| 1 and 3 | 100% to the owner and 0% to the non–owner |
| 2 and 4 | 75% to the owner and 25% to the non–owner |
| 5 | 50% to the husband and 50% to the wife |

*See Hashimoto*, 6 Haw. App. at 427–28, 725 P.2d at 522.

At the time of the marriage in this case, Husband owned several assets, including $42,982 in cash and an apartment in the Mauna Luan with a NMV of $33,000. Sometime during the marriage, the Mauna Luan apartment was sold and the proceeds from the sale, as well as the $42,982 in cash, were deposited into accounts held jointly by the parties. Monies from these funds were subsequently used to purchase the marital residence on Waialae–Iki Ridge in 1986 for $300,000, which at DOCOEPOT was determined to have an equity or NMV of $583,000. The title to the home was held jointly. The parties worked together in finding the lot, negotiating the price, obtaining plans, designing the interior, locating a contractor, purchasing materials, supervising

construction, installing tile and carpet, planting and landscaping, and furnishing the residence.

In accordance with the ICA's required process, the family court "categorized" the $42,982 in cash and the $33,000 NMV of the Mauna Luan at DOM and declared the total amount of $75,982 as Husband's separate property under "category 1." The court applied an inflation factor of 1.3296[2] to the $75,982, which increased the value to $101,026 to reflect "late 1989, early 1990 dollars." The court then subtracted $101,026 from the residence equity of $583,000, leaving a balance of $481,974. The court awarded the entire $101,026 to Husband, consistent with the 100% owner–0% nonowner USP under category 1, and divided the $481,974 and other marital assets 50% Husband–50% Wife under category 5.

Although Wife acknowledges that the $75,982 was originally Husband's separate property, she maintains that such monies had been "transmuted"[3] into marital property or gifted to her when it was commingled with the marital residence in joint title. Thus, Wife submits that the entire $583,000 equity or NMV should have been divided equally under category 5. However, the ICA rejected the transmutation theory because it involved tracing and "is inconsistent with this court's definition of a Category 1 NMV[.]" *Gussin v. Gussin*, No. 14966, slip op. at 9 (Haw. App. Oct. 17, 1991). The ICA also held as a matter of law that "there is no evidence that Husband legally gifted any Category 1 NMVs to Wife or to Husband and Wife." *Id.*

---

[2] The family court calculated the inflation factor, 1.3296, from the Consumer Price Index for Honolulu in the first half of 1983 (98.6) and for the second half of 1989 (131.1).

[3] "Transmutation" is the conversion of separate property into marital property during marriage by expressed or implied acts. *See* J.T. OLDHAM, DIVORCE, SEPARATION AND DISTRIBUTION OF PROPERTY § 11.01, at 11–1 (1990).

The family court also categorized assets in Kaneohe, Kona, and Kauai as Husband's separate category 1 property. The family court then awarded Husband 85% and Wife 15% of the category 2 marital appreciation on these properties, deviating from the 75% owner–25% nonowner USP for category 2. The during–marriage appreciation of these three properties was valued at $120,796.[4] However, the family court calculated the 1983 to 1990 marital appreciation by first applying the inflation factor to the 1983 DOM NMVs, which increased Husband's category 1 values for these properties, and then subtracted those inflated 1983 NMVs from the 1990 NMVs, resulting in a reduction of the marital appreciation from $120,796 to $103,533 to be divided under category 2. Wife contends that family court's calculation was in error because it reduced her 15% to 12% and increased Husband's 85% to 88% of the actual $120,796 appreciation on these three properties.

Although the ICA acknowledged that the family court relied upon improper criteria in reducing Wife's share of category 2 marital appreciation from the USP of 25% to 15%, the ICA concluded the error was harmless because "the family court awarded

---

[4] The family court determined that any during–marriage appreciation of the $33,000 value for Mauna Luan (Husband's category 1 property) was not a separate asset subject to division. The family court found

that Wife received benefit of any appreciation accrued during the marriage on the Mauna Luan condominium as it was sold during the marriage and the funds utilized for the benefit of the parties. That is a separate consideration from the premarital value of that asset. Awarding Husband with [sic] the premarital equity value is not inconsistent with her having benefited from her share of the asset during the marriage.

The family court makes no similar finding in regard to the $42,982 category 1 cash asset; however, we assume the same rationale regarding the Mauna Luan asset was applied here because the during–marriage appreciation as a separate asset subject to division was limited to Kaneohe, Kona, and Kaiser properties.

Wife more than she would have been awarded pursuant to the USP adjusted for inflation." *Gussin*, slip op. at 11.

The family court's final division and distribution of the parties' marital estate, affirmed by the ICA, was $528,711.635 to Husband and $289,838.575 to Wife.

Wife appealed the family court's award and the ICA affirmed. We granted certiorari to review the ICA's ruling.

## II. UNIFORM STARTING POINTS
### A. USPs and HRS § 580–47

We first address the issue whether the ICA's USPs are consistent with the wide discretion conferred upon the family court by HRS § 580–47, which provides in pertinent part:

> Upon granting a divorce . . . the court may make such further orders as shall appear just and equitable . . . finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate. . . . In making such further orders, the court *shall* take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

HRS § 580–47(a) (Supp. 1990) (emphasis added).

The ICA has taken the position that HRS § 580–47 does not preclude Hawaii's appellate courts "from narrowing the discretion available to the various family courts by establishing and mandating adherence to uniform categories, USPs, uniform limits on the range of choice, and uniform procedures." *Bennett v. Bennett*, 8 Haw. App. 415, 422, 807 P.2d 597, 601–02 (1991). In view of the plain meaning and our construction of the statute, we disagree.

In *Myers v. Myers*, 70 Haw. 143, 764 P.2d 1237 (1988), we construed the statute to confer wide discretion upon the family court. We stated that

"[t]here is . . . no fixed rule for determining the amount of property to be awarded each spouse in a divorce action other than as set forth in HRS § 580–47." *Au Hoy v. Au Hoy*, 60 Haw. 354, 357, 590 P.2d 80, 82 (1979). Section 580–47 "gives to the family court the discretion to divide marital property according to what is just and equitable[,]" *Cassiday v. Cassiday*, 68 Haw. 383, 388, 716 P.2d 1133, 1137 (1986) (citation omitted) . . . .

When the directive to the court is to do what is just and equitable in the circumstances, "[o]f course, each case must be decided upon its own facts and circumstances." *Carson v. Carson*, 50 Haw. 182, 183, 436 P.2d 7, 9 (1967). This "do[es] not mean that the . . . court may do whatever pleases it. [A grant of discretion] means instead that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984).

*Id.* at 148–49, 764 P.2d at 1241. In other words,

"[d]iscretion" denotes the absence of a hard and fast rule. [Citation omitted.] When involved as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.

*Booker v. MidPac Lumber Co.*, 65 Haw. 166, 172, 649 P.2d 376, 382 (1982) (citing *Langnes v. Green*, 282 U.S. 531, 541 (1931) (quoted in *Cooke Trust Co. v. Edwards*, 43 Haw. 226, 231 (1959)).

This court has "avoided, where possible, the adoption of general rules governing the division of marital assets," *Myers*, 70 Haw. at 49, 764 P.2d at 1241, because such general rules create rebuttable presumptions, which narrow the discretion of family court judges, and are thus repugnant to HRS § 580-47.

In *Cassiday v. Cassiday*, 68 Haw. 383, 716 P.2d 1134 (1986), we reviewed on certiorari the ICA's general rule that

> it is equitable to award each divorcing party one-half of. the after acquisition but during marriage real increase in the net value of property separately owned at the [time of marriage] or acquired during the marriage by gift or inheritance and still separately owned at the [time of divorce].

*Id.* at 388, 716 P.2d at 1137. We rejected the ICA's general rule because "[t]he effect of such a rule is to create a rebuttable presumption that [any appreciation in] separate property should be evenly divided[,]" *id.*, and because judges should not be "bound by any rule that *automatically presumes* a fifty-fifty split[.]" *Id.* (emphasis added).

Following *Cassiday*, the ICA, in *Hashimoto v. Hashimoto*, 6 Haw. App. 424, 725 P.2d 520 (1986), created the original five categories and their respective USPs. The ICA stated:

> Apparently, the label "general rule" does not adequately describe our intended meaning. Our "general rules" are not intended to be "fixed rules for determining the amount of property to be awarded to each spouse in a divorce action[.]" They are merely "uniform starting points" from which to commence equitable distribution analysis and application of statutory and case law mandates. Therefore, we hereby replace the old label of "general rule" with a new label of "uniform starting point."

*Id.* at 426, 725 P.2d at 522 (citation omitted). The ICA then proceeded to arbitrarily change the prohibited 50/50 automatic split

for during marriage appreciation of separate property to 75/25, stating:

> In *Cassiday*, the supreme court disapproved of a 50–50 uniform starting point for dividing the net market values under categories 2 and 4. Thus, the applicable uniform starting point could be 51–49 or 100–0 or any ratio in between. Considering that the maximum that can be awarded to the non–owner spouse is 50% and the minimum is 0%, we select a 75%–25% uniform starting point for dividing the net market values under categories 2 and 4.

*Id.* at 428, 725 P.2d at 523.

The ICA's relabeling of the "general rule" to "uniform starting point" does not in any way alter the impact of USPs creating rebuttable presumptions, which bind a judge to automatically presume specific percentage splits in the division of each category of property.

In *Myers*, this court struck another rebuttable presumption created by the ICA's USP for category 6, which was added in *Woodworth v. Woodworth*, 7 Haw. App. 11, 740 P.2d 36 (1987), *overruled in part*, *Myers v. Myers*, 70 Haw. 143, 764 P.2d 1237 (1988) (noted in *Bennett v. Bennett*, 8 Haw. App. 415, 420, 807 P.2d 597, 601 (1991), and *Gardner v. Gardner*, 8 Haw. App. 461, 466, 810 P.2d 239, 243 (1991)).[5] We again held that family court judges " 'should [not] be bound by [a] rule that automatically presumes' " a predetermined division of marital property. *Myers*, 70

---

[5] The court's additional sixth category covered "[t]he difference between the NMVs, plus or minus, of all property owned by one or both of the spouses at the conclusion of the evidentiary part of the trial and the total of the NMVs, plus or minus, includable in categories 1, 2, 3, 4, and 5." *Woodworth*, 7 Haw. App. at 16, 740 P.2d at 40. The ICA then announced that "the USP for dividing the NMVs under category 6 is to award them to their legal owner spouses in proportion to their legal ownership." *Id.* at 17, 740 P.2d at 41.

Haw. at 154, 764 P.2d at 1244 (citation omitted).  We stated that the USP for category 6, "in our view, cannot be squared with the mandate of HRS § 580–47 'to look beyond the mere form of title' in dividing the estate of the parties." *Id.* at 153, 764 P.2d at 1243 (quoting Kastely, *An Essay in Family Law: Property Division, Alimony, Child Support, and Child Custody*, 6 U. HAW. L. REV. 381, 393 (1984)).  Although we did not pass judgment on the validity of USPs relating to categories 1, 2, 3, 4, and 5, we do so today.

## B.  Validity of USPs

USPs as mandated by the ICA are rebuttable presumptions. They undeniably restrict the exercise of the family court's wide discretion.  Such restriction is apparent where the ICA has declared that "uniform starting points preclude the use of non–uniform starting points," *Malek v. Malek*, 7 Haw. App. 377, 381, 768 P.2d 243, 247 (1989), and that family courts "*must* start at the applicable USPs and 'then . . . must exercise its equitable discretion under applicable case law and [HRS] § 580–47(a) (1985).' " *Bennett*, 8 Haw. App. at 424, 807 P.2d at 602 (emphasis added and citation omitted).  Additionally, "[t]he party who wants the family court to deviate from USPs has the burden of proof." *Gussin*, slip op. at 7.

According to the ICA, the need for USPs "is obvious." *Hashimoto*, 6 Haw. App. at 426–27, 725 P.2d at 522.  The ICA reasons that

[i]f different family court judges commence deciding in what proportion to equitably divide the value of the property from different starting points, which could range from a 100–0 split to a 0–100 split, then their awards will be equally diverse.[4]  There will be no uniformity, stability, clarity, or predictability.  The ultimate decision will depend less on the facts and the law and more on who is the judge assigned to hear and decide the case.

*Id.* In footnote 4 above, the ICA illustrates its concern with potentially diverse decisions if USPs are not utilized:

> Suppose a case where the only facts proved are the marriage and the existence of jointly owned property. In the absence of a uniform starting point, one judge might award all of the property to the wife. Another might award it all to the husband. On appeal, both decisions would have to be affirmed as not being an abuse of discretion.

*Id.* at 427 n.4, 725 P.2d at 522 n.4. We disagree.

This court has accepted the "time honored proposition that marriage is a partnership to which both partners bring their financial resources as well as their individual energies and efforts." *Cassiday v. Cassiday*, 68 Haw. at 387, 716 P.2d at 1136 (citing Kastely, *supra*, at 390–91). The ICA has also acknowledged that, in divorce proceedings regarding division and distribution of the parties' estate, "partnership principles guide and limit the range of the family court's choices." *Bennett*, 8 Haw. App. at 423, 807 P.2d at 602.

> Under general partnership law, "each partner is entitled to be repaid his contributions to the partnership property, whether made by way of capital or advances." 59A Am. Jur. 2d *Partnership* § 476 (1987) (footnotes omitted). Absent a legally permissible and binding partnership agreement to the contrary, "partners share equally in the profits of their partnership, even though they may have contributed unequally to capital or services." *Id.* § 469 (footnotes omitted). Hawaii partnership law provides in relevant part as follows:
>
> > **Rules determining rights and duties of partners.** The rights and duties of the partners in relation to the partnership shall be deter-

mined, subject to any agreement between them, by the following rules:

> (a) Each partner shall be repaid the partner's contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to the partner's share in the profits.

*Gardner v. Gardner*, 8 Haw. App. 461, 464–65, 810 P.2d 239, 242 (1991) (quoting HRS § 425–118(a) (1985)). Thus, in the absence of any agreement between husband and wife in the ICA's *Hashimoto* illustration, partnership principles of law require an equal division of the marital property "where the only facts proved are the marriage and the existence of jointly owned property." *Hashimoto*, 6 Haw. App. at 427 n.4, 725 P.2d at 522 n.4. Clearly, it is the court's *ending* point, and not its starting point, which bears on whether the court has abused its discretion. However, the ICA requires that the family court specify the "factual considerations upon which the deviation or the refusal to deviate from [a] USP is based, [to] make the question [whether there is abuse of discretion] much more specific." *Hatayama v. Hatayama*, 9 Haw. App. 1, 9, 818 P.2d 277, 281 (1991) (citation omitted).

The ICA's concern that, without USPs, appellate review for abuse of discretion will be impeded and will be confined merely to consideration of the family court's ending point is reflected by the following:

> The USP applicable to the Category 5 NMV is 50% to each spouse. In the absence of a USP, each family court judge will have the discretion to start at a different Cate-

gory 5 starting point in each divorce case. The family court judge will have the discretion to apply a Category 5 starting point of 100% to the husband and 0% to the wife in one case and a Category 5 starting point of 100% to the wife and 0% to the husband in another case. On appeal, only the family court judge's ending point will be reviewed and it will be reviewed only under the abuse of discretion standard of review.

*Id.* at 10 n.2, 818 P.2d at 281 n.2. We adopt ICA Judge Heen's salient response to the above statement in his concurring opinion wherein he reiterated his rejection of USPs, which he first expressed in *Bennett*:[6]

The statement is entirely correct and is in complete consonance with [HRS § 580–47(a)]. It is our function to review the trial court's decision to determine whether it leaves the parties in a position that satisfies the factors outlined in the statute. It is not our function to determine if the court started from a point which is not mandated by the statute.

*Hatayama*, 9 Haw. App. at 14, 818 P.2d at 284 (Heen, J., concurring).

Admittedly, the ICA's purpose and goals in promulgating USPs are commendable. However, they are unrealistic because

---

[6] In *Bennett*, Judge Heen stated:

Although each family court judge may view the facts of each divorce case differently, that is exactly what the statute allows them to do. The statute is based on a sound realization that there cannot be [uniformity or] predictability in marital property splits because no two cases involve the same set of facts. It is up to the appellate courts to determine whether the result the family court reaches is within the bounds of reason, not whether the individual judge had started from the same point. Facilitation of that review is not the purpose of HRS § 580–47(a).

*Bennett*, 8 Haw. App. at 430, 807 P.2d at 605 (Heen, J., concurring).

each case is factually and circumstantially unique, and therefore outcomes will necessarily be diverse. To the extent that a certain degree of "uniformity, stability, clarity or predictability" of family court decisions can be attained, while at the same time preserving the wide discretion mandated by HRS § 580–47, judges are compelled to apply the appropriate law to the facts of each case and be guided by reason and conscience to attain a just result. Moreover, we conclude that our acceptance of the "partnership model of marriage"[7] provides the necessary guidance to the family courts in exercising their discretion and to facilitate appellate review.

We therefore hold that USPs, as mandated by the ICA, are violative of HRS § 580–47 because they restrict the family courts' discretion in the equitable division and distribution of parties' estates.

## III. DISCUSSION

In this case, the family court did not comply with the ICA's specific mandate that it list "how . . . [categories of marital property] would be divided and distributed to the parties under the applicable USPs." *Muraoka v. Muraoka*, 7 Haw. App. 432, 438, 776 P.2d 418, 422 (1989). However, certain comments by the judge indicate that she did attempt to abide by the USPs. Regardless, we review the family court's final division and distribution of the estate of the parties under the abuse of discretion standard, in view of the factors set forth in HRS § 580–47 and partnership principles of law.

### A. Transmutation Theory and Gift

We turn now to the issue whether the ICA erred in rejecting Wife's transmutation theory and in holding that there was no evidence that Husband's separate property, totaling $75,982 ($42,982 in cash and $33,000 NMV of the Mauna Luan), was gifted to Wife or to the marital estate.

---

[7] *See Myers*, 70 Haw. at 154, 764 P.2d at 1244.

Wife argued that, although the $75,982 was Husband's separate property on the date of marriage, these assets were commingled in joint accounts and utilized to purchase the marital residence under joint title and were thus transmuted into marital assets. "Transmutation" is the conversion of separate property into marital property during marriage by expressed or implied acts.[8] Wife contended that under transmutation, the evidence raised a rebuttable presumption of gift from Husband to Wife or to the marital estate, which Husband failed to rebut by clear and convincing evidence.

The ICA rejected the transmutation theory on the grounds that it requires tracing of funds. The ICA stated, "[w]e have concluded that '[t]he categorization of Categories 1 and 3 NMVs does not involve tracing beyond the transaction by which the husband or wife acquired the property.' " *Gussin*, slip op. at 9 (citing *Gardner v. Gardner*, 8 Haw. App. 461, 476, 810 P.2d 239, 247 (1991)).

However, earlier in *Hashimoto v. Hashimoto*, 6 Haw. App. 424, 725 P.2d 520 (1986), the ICA rejected the transmutation theory for a completely different reason. In *Hashimoto*, the ICA stated:

> The more fundamental error, however, is an error of law. In a memorandum filed on May 28, 1985, Wife noted the different rules applied in other states with respect to the division of separate property upon divorce. She referred to . . . the "transmutation of property" rule. . . .

---

[8] Most courts accept that separate property can be transmuted into marital property if the owning spouse designates joint title, or if the owing spouse commingles separate and marital property and the funds cannot be uncommingled. There is less agreement regarding the effect of an interspousal gift, where the item given was purchased with marital property.

OLDHAM, *supra* note 3, § 11.04 at 11–33 (footnotes omitted).

> It appears that the family court applied the "transmu-
> tation of property" rule in this case. *In Hawaii, however,
> such "fixed rules" are prohibited. Cassiday,* 68 Haw. at
> [388], 716 P.2d at 1137.

*Id.* at 430, 725 P.2d at 520 (emphasis added). We agree with the ICA's holding in *Hashimoto* and with those jurisdictions which have rejected the doctrine of transmutation[9] that presumptions arising therefrom are "fixed rules" and are thus inconsistent under equitable distribution statutes such as HRS § 580-47.

However, we disagree with the ICA in its holding, as a matter of law, that

> there is no evidence that Husband legally gifted any Cate-
> gory 1 NMVs to Wife or to Husband and Wife. The fact
> that after the DOM [date of marriage] Husband deposited
> some of his Category 1 NMV into a marital fund which
> was used to purchase a joint asset, is insufficient to prove
> the occurrence of a legal gift of that NMV to Wife.

*Gussin,* slip op. at 9. The basis for such an evidentiary review by the ICA is improper. We acknowledge Husband's contentions that the family court assessed the credibility of the parties and weighed the evidence in determining that the "value of these premarital assets was not gifted to Mrs. Gussin or the marital partnership during the marriage because of the absence of donative intent on Dr. Gussin's part." However, our review of the record indicates that the family court did not make any findings as to donative intent or any other issue bearing on whether a gift had been made.

The ICA's analysis of the gift issue in this case is inconsistent with what it required of the family court in *Bennett v. Bennett,* 8 Haw. App. 415, 807 P.2d 597 (1991). In *Bennett,* the family court found that a premarital cash contribution made towards the purchase of a marital residence was a gift. Upon review of the family

---

[9] *See generally* OLDHAM, *supra* note 3, §§ 11.01[2] and 11.03.

court's decision, the ICA remanded the case for the family court to determine whether all of the essential elements of a legal gift from wife to husband were met. *Id.* at 425, 807 P.2d at 603. The ICA stated:

> The questions for the family court to decide were:
>
> . . . .
>
> 2. Did [wife] legally gift any part of the NMV of her DOM cash and receivable to [husband] during the marriage? More specifically, when [wife] used her DOM cash and receivable in the purchase of 59–003 Holawa Place in joint ownership with [husband], did she legally gift the amount used, or any portion thereof, to [husband]? *To constitute a gift, the essential elements are (1) donative intent, (2) delivery, and (3) acceptance....*

*Id.* (emphasis added and citations omitted).

Because the family court failed to make any findings as to donative intent or any other element bearing on whether a legal gift had been made, we conclude that the ICA erred in not remanding the issue of gift for the family court to decide.

## B. During–Marriage Appreciation

Wife also argues that the ICA erred in affirming the family court's deviation from the category 2 during–marriage appreciation USP of 75% Husband–25% Wife to 85% Husband–15% Wife, and in failing to find, as an abuse of discretion, the family court's application of the inflation factor, which further reduced Wife's share to 12%.

In its consideration of dividing category 2 assets, the family court stated:

> With regard to the category two property. The [c]ourt is going to deny your request to increase [Wife's] award to twenty–five percent of any increase — of deficit for that

> matter — since there was category two property that had increased in value and other that depreciated in value.
>
> The [c]ourt in looking at the range of participation realizes it could be anywhere *from zero to twenty-five percent* with regard to category two property.
>
> Based on the [c]ourt's review of the evidence and the testimony presented the [c]ourt found that she's entitled to no more th[a]n fifteen percent.

(Emphasis added.) The family court clearly erred in placing a limit on Wife's potential award at the USP of 25% because such limitation is directly contrary to this court's holding in *Cassiday* wherein we held "that the trial court may award up to half of this [during marriage] appreciation to the non–owning spouse if under the totality of the circumstances, it is just and equitable to do so. The trial court also may determine that a lesser award, or no award, is in order." *Cassiday v. Cassiday*, 68 Haw. 383, 389, 716 P.2d 1134, 1138.(1986).

It is apparent that the family court in this case divided and distributed the marital appreciation by attempting to comply with the requirement of the 75/25 USP and in doing so erroneously limited her range of choice by virtue of the applicable USP. The ICA found that the family court's "factual considerations . . . did not authorize any deviation from the USP." *Gussin*, slip op. at 10. However, the ICA affirmed the deviation because its calculation of the final division and distribution of the parties' estate premised on "USP adjusted for inflation" was less than what the family court awarded.[10] In view of our rejection of USPs and the family court's error in limiting her range of choices, the ICA's rationale in affirming this portion of the final award cannot stand. We are thus com-

---

[10] Under the family court's final division and distribution of the parties' estate, Wife received an award of $289,838.575. According to the ICA, Wife would have received $283,263.905 if the category 2 USP (75/25), adjusted for inflation, had been used.

pelled to vacate that portion of the divorce decree relating to the 85/15 division of marital appreciation. On remand, the family court must reassess its division and distribution of the marital appreciation in the absence of the USPs as previously mandated by the ICA.

## C. Inflation Factor

Finally, we address Wife's contention that the family court erred by awarding Husband 30% inflation based on the Consumer Price Index (CPI) on Husband's category 1 separate property at DOM, which increased Husband's award of the Mauna Luan equity and cash, totalling $75,902, to $101,026, and which increased Husband's share from 85% to 88% and reduced Wife's share from 15% to 12% of the category 2 marital appreciation.

The ICA in *Cassiday* adjusted Husband's property separately owned at the date of marriage for inflation by the use of the CPI. *See Cassiday v. Cassiday*, 6 Haw. App. 207, 716 P.2d 1145, *cert. granted*, 67 Haw. 685, 744 P.2d 781 (1985), *aff'd in part and rev'd in part*, 68 Haw. 383, 716 P.2d 1133 (1986). This court upheld the adjustment stating, "[w]e find it unnecessary to set forth a hard and fast rule regarding the use of the Consumer Price Index. We merely find that adjusting for inflation is within the sound discretion of the trial court." *Cassiday*, 68 Haw. at 390, 716 P.2d at 1138. However, in the present case, although the ICA affirmed the family court's inflationary adjustment, it stated, "we now urge all family courts not to adjust Category 1 NMVs (separate property owned at date of marriage) for inflation." *Gussin*, slip op. at 8. We agree with the ICA that such property should not be adjusted for inflation and find it necessary to retreat from the position advanced in *Cassiday*.

Professor Oldham indicates that "[m]ost equitable distribution states without specific statutes pertaining to separate property appreciation have concluded that appreciation due to inflation or market forces is separate property." OLDHAM, *supra* note 3,

§ 6.04[3] at 6–17. However, we have held that "appreciation of property separately owned at the time of marriage or acquired during the marriage by gift or investment and still separately owned at the time of divorce [is] a marital asset subject to division after consideration of all relevant circumstances of the case." *Cassiday*, 68 Haw. at 387, 716 P.2d at 1136 (citing *Takara v. Takara*, 4 Haw. App. 68, 71, 660 P.2d 529, 532 (1983)); *see also* A. Kastely, *supra*, at 390 ("Under that [partnership] model, each spouse is entitled to the return of his or her contribution (the net value of his property at the time of marriage and the date–of–acquisition value of gifts and inheritance) but any income or increase value of that property belongs to the partnership, and thus, is subject to division.").

The family court's rationale in not treating the during–marriage appreciation reflected by the inflationary factor as a separate marital asset subject to division is unacceptable. *See supra* note 4. To bar a non–owning spouse from sharing in the marital appreciation of the owning spouse's separate property merely because the benefits of such property were shared during the marriage would be inconsistent with the partnership model of marriage.

> The use of such a model accords with the community's general expectations and sense of fairness. It treats marriage as a full commitment of each spouse. If the alternative rule is adopted, and appreciated value of the separate property is not included as marital property, then marriage becomes only a partial commitment, from which each spouse holds back his or her personal property. This alternative may be rejected merely as a matter of sound policy. The concept of marriage as a joint effort, to which each party contributes his financial resources and personal efforts, is gaining prominence, and it has been endorsed by numerous courts. It is appropriate for the

law to encourage sharing within marriage and to equalize ownership at the time of divorce.

A. Kastely, *An Essay in Family Law: Property Division, Alimony, Child Support, and Child Custody*, 6 U. HAW. L. REV. 381, 390–91 (1984); *see also Cassiday*, 6 Haw. App. at 213 n.7, 708 P.2d at 1150 n.7 (citing Kastely, *supra*).

We now hold that marital appreciation of property separately owned at the time of marriage or acquired by gift, inheritance or investment, which is subject to division, includes that which is due to inflation or other economic factors. Therefore, we conclude that family courts shall not adjust such property for inflation.

## IV. CONCLUSION

Based on the foregoing, we prohibit the use of USPs, as mandated by the ICA, because they are violative of HRS § 580–47. We also vacate the family court's decree of divorce relating to the division and distribution of the marital appreciation derived from Husband's separately owned assets at the DOM and remand for further proceedings consistent with this opinion.

*Peter Van Name Esser* and *Willard J. Peterson* of Peterson & Esser; and *Paul A. Tomar* for Petitioner–Appellant Lisa Gussin.

*Charles T. Kleintop* and *Carolyn O. Tavoularis* of Stirling & Kleintop for Respondent–Appellee Daniel A. Gussin.

## DISSENTING OPINION BY LUM, C.J.

I respectfully dissent and write separately to express my displeasure at the broad sweep of sections A and B.

I believe that the Uniform Starting Points created by the Intermediate Court of Appeals (ICA) and modified by this court in *Myers v. Myers*, 70 Haw. 143, 764 P.2d 1237 (1988), and *Cassiday v. Cassiday*, 68 Haw. 383, 716 P.2d 133 (1986), conform with

Hawaii Revised Statutes (HRS) § 580–47(a), are not unduly burdensome to the trial courts, offer litigants a modicum of predictability and encourage the resolution of marital property disputes through private settlements and agreements. Under the *Myers* and *Cassiday* limitations, the Intermediate Court's Uniform Starting Points provide trial courts only with a basic starting point—not an ending point. As such, the trial court is free to exercise its statutorily conferred discretion, only limited by its willingness to provide findings of fact to permit meaningful judicial review. The current Uniform Starting Points provide some amount of continuity between courts in how they reach a property settlement but in no way diminish the discretion to vary decisions based on differing factual circumstances. I would therefore permit the continued utilization of Uniform Starting Points only to the extent that they provide guidance to the trial court as to the process by which it determines marital property division.

This court has long recognized that HRS § 580–47(a) " 'gives to the family court the discretion to divide marital property according to what is just and equitable' " and thus we have rejected "general rules" that create "rebuttable presumptions" as to the division of marital property. *Myers v. Myers*, 70 Haw. 143, 148, 764 P.2d 1237, 1243 (1988). *See also Cassiday v. Cassiday*, 68 Haw. 383, 388, 716 P.2d 1133, 1137 (1986); *Au Hoy v. Au Hoy*, 60 Haw. 354, 357, 590 P.2d 80, 82 (1979). Despite this court's steadfast faithfulness to HRS § 580–47(a), broad unguided discretion exercised at the trial level, where each court may impose its unfettered will upon litigants, risks promoting an unnecessary amount of discontent with and disdain for the judicial process. It is my belief that guided discretion produces equitable, stable, and predictable results and therefore fosters informal settlement among litigants who can fairly predict the outcome of litigation.[1] Uniform

---

[1] The court has broad discretion in determining an equitable distribution and, until recently, the case law indicated only very general factors to be

Starting Points provide a road map to litigants as to how a trial court begins the process of achieving the "just" results mandated by the statute so that they might attempt to reach private agreements on the division of property in the same manner.

The legislature has given the trial court a general goal to be achieved and provided the court with the factors to be considered when dividing marital property but it is the appellate court's prerogative to provide trial courts with a method to achieve those results. "[Q]uite often statutes are generalizations which the legislature intends for the courts to extend and complete insofar as they may afford principles for the determination of . . . litigation in the different contexts of varying facts and later times." Tate, *The Law–Making Function of the Judge*, 28 LA. L. REV. 211, 217–18 (1968), *quoted in* ROBERT LEFLAR, APPELLATE JUDICIAL OPINIONS 70 (1974). Uniform Starting Points do not offend the statute, rather, they demystify the method a court uses to achieve those statutory goals.

While it is true that the legislature vested discretion in the trial court, the legislature also vested our appellate courts with the obligation and responsibility to articulate generalizable rules of law. " 'The function of the reviewing court is: (1) to see that justice is done according to law in the cases that are brought before it, (2) to see that justice is administered uniformly throughout the state, and (3) to give authoritative expression to the developing body of the law.' " Parker, *Improving Appellate Methods*, 25 N.Y.U. L. REV. 1 (1950). To the small extent that Uniform Starting Points may

---

considered, including the parties' relative needs and contributions to the estate. Under this scheme, the outcome of any individual dispute is difficult to predict, and informal settlement negotiations must proceed against a "backdrop of uncertainty." Many litigants may be reluctant to settle in the hopes of larger court–ordered awards.

Kastely, *An Essay in Family Law: Property Division, Alimony, Child Support, and Child Custody*, 6 U. HAW. L. REV. 381, 384–85 (1984) (footnotes omitted).

intrude upon the discretion of the trial court, they do so to protect the integrity of the system. In *Hashimoto v. Hashimoto*, 6 Haw. App. 424, 725 P.2d 520 (1986), Judge Burns correctly stated the dilemma an appellate court faces when it has not articulated general principles of law:

> Suppose a case where the only facts proved are the marriage and the existence of jointly owned property. In the absence of a uniform starting point, one judge might award all of the property to the wife. Another might award it all to the husband. On appeal, both decisions would have to be affirmed as not being an abuse of discretion.

6 Haw. App. at 427 n.4, 725 P.2d at 522 n.4.

In *Hashimoto* Judge Burns also alluded to a serious judicial problem which I believe the majority has not fully considered. Judge Burns warned, "[t]here will be no uniformity, stability, clarity, or predictability. The ultimate decision will depend less on the facts and the law and more on who is the judge assigned to hear and decide the case." *Id.* at 427, 725 P.2d at 522–23. The complete abolition of Uniform Starting Points risks bringing an unwelcome mischief to the law which does not serve the court's equity and discretion as imagined by HRS § 580–47.

This court has eschewed using Uniform Starting Points where they create rebuttable presumptions that take away any discretion of the trial court to reach "just and equitable" results in property division. However, the Uniform Starting Points, as they have now developed, do not favor the starting point. "The process we have developed is designed to standardize and facilitate the factual analysis, facilitate settlements, identify the reasons for a particular decision, facilitate appellate review, facilitate the continued case–by–case development of express and uniform ranges of choice applicable statewide in *similar fact situations*, and bring as much

statewide consistency, uniformity, and predictability as is possible to family court decisions[.]" *Bennett v. Bennett*, 8 Haw. App. 415, 421, 807 P.2d 597, 601 (1991) (emphasis added). However, the starting points do not affect discretion because once the starting points for the property are determined, each side provides the court with their position "with respect to the division and distribution of each of the various items of plus and minus value." *Muraoka v. Muraoka*, 7 Haw. App. 432, 438, 776 P.2d 418, 422 (1989). And where either side is dissatisfied with the result, the family court is required to "specify the factual considerations upon which the difference [from the starting points] is based" or "the family court must specify the factual considerations upon which the denial of the requested difference [from the starting points] is based." *Id.* at 439. Thus, I see no advantage to trial courts that end where the Uniform Starting Points begin, because appellate courts will review them freshly, and without presumption either way. Instead, I see a method that helps combative parties begin a process of resolution, and a process which encourages trial courts to make a reviewable record.

The judicial authority to create a scheme by which trial courts exercise discretion is certainly within the power of our appellate courts. For example, the rule articulated in *Cassiday v. Cassiday*, where this court held that "the trial court may award up to half of this [during–marriage] appreciation [of separately owned property] to the non–owning spouse if, under the totality of the circumstances, it is just and equitable to do so[]" is a rule of judicial creation which limited the trial court's discretion to award an amount greater than half of non–owned property to the non–owning party. 68 Haw. at 389, 716 P.2d at 1137. Clearly HRS § 580–47(a) includes such property in the "estate of the parties" and yet this court believed it was within its appellate prerogative to give guidance to the trial courts as to how to divide such property because such property is fundamentally different than property

acquired or held together.[2]  Following *Cassiday*, the Intermediate Court of Appeals directed lower courts to start to divide that property in the middle of the allowable range, namely 75%–25%. This directive indicates to the trial court that it should favor neither man nor woman at the onset, but that the division reached, be it 75–25 or 50–0, must be supported by the record.

I would therefore hold that trial courts should continue to utilize the Uniform Starting Points in order to facilitate the process of reaching an equitable distribution of property among parties and as a method of ensuring meaningful appellate review.

---

[2] *See* Comment, *The Treatment of Unearned Separate Property at Divorce in Common Law Property Jurisdictions*, 1990 Wis. L. Rev. 903, 914 (1990) ("although the source or contribution factors may be heavily weighed in the all–property system, the list of factors to be considered by the court also includes a number of factors that bear on the issue of need[]").