LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 29373

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

GERALD PATRICK DURKAN, Plaintiff-Appellee/Cross Appellant
v. SUSAN LYNN DURKAN, Defendant-Appellant/Cross Appellee

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-DIVORCE NO. 07-1-0190)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant/Cross-Appellee Susan Lynn Durkan
(**Susan**) appeals from the Family Court of the Second Circuit's
(**Family Court**) August 27, 2008 Decree Granting Absolute Divorce
and Awarding Child Custody (**Divorce Decree**).[1]

I.  BACKGROUND

Plaintiff-Appellee/Cross-Appellant Gerald Patrick
Durkan (**Gerald**) and Susan were married on June 14, 1975.  On May
2, 2007, Gerald filed a complaint for divorce in the Family
Court.  Susan and Gerald have eight children, three of whom were
minors when Gerald filed for divorce.

The Family Court filed an Order Appointing Private
Mediator on January 30, 2008 in order to resolve certain pre-
decree relief issues.  A Stipulated Order for Pre-Decree Relief
(**Stipulation**) was entered on March 24, 2008, setting forth the
agreements reached by Susan and Gerald during mediation.  The
Stipulation included a provision that stated Susan would be
"advanced the sum of $50,000 from her final divorce property
division to pay her ongoing expenses for housing, health care,
and attorneys' fees and costs."

The Family Court held a contested divorce trial on June
10, 13 and 17, 2008.  On August 27, 2008, the Family Court issued

---

[1]    The Honorable Keith E. Tanaka presided.

the Divorce Decree. The Divorce Decree granted Gerald legal custody of the couple's three minor children. Gerald was ordered to pay Susan alimony in the amount of $3,000 per month for a three-year period. The Family Court found that Susan was not required to pay child support to Gerald because of the "financial circumstances of the parties." Id. Additionally, the Divorce Decree divided the couple's cash assets and joint property equally and assigned insurance policies and personal debt to the party they were titled to.

With respect to the couple's real property, Gerald was awarded a Maui property, while Susan was awarded a "$600,000 equalization payment for her 50% equity interest in the real property[.]" Susan was awarded a Colorado property and Gerald was "credited $186,000 for his 50% interest in the real property." Id. Susan was also awarded a property located in the Fiji Islands and Gerald was "credited $114,500 as an equalization payment for is [sic] 100% equity interest in the real property."

On September 24, 2008, Susan timely filed a notice of appeal. Gerald timely filed a notice of cross-appeal on October 8, 2008. The Family Court entered Findings of Fact and Conclusions of Law on November 3, 2008. Thereafter, Gerald filed a motion to dismiss cross-appeal on March 26, 2009. This court granted Gerald's motion and dismissed the cross-appeal on April 7, 2009. Durkan v. Durkan, No. 29373, 2009 WL 961203, at *1 (Haw. App. April 7, 2009).

II. POINTS ON APPEAL

Susan raises the following points of error on appeal:

(1) The Family Court abused its discretion in awarding Susan an alimony award of $3,000 per month for three years because it was contrary to statutory and decisional law governing alimony and created a situation where Susan would be forced to spend down her assets post-divorce;

(2)     Conclusion of Law 3, which awarded Susan an alimony award of $3,000 per month for three years, reflects an abuse of discretion and is wrong because it was contrary to statutory and decisional law governing alimony and created a situation where Susan would be forced to spend down her assets post-divorce;

(3)     Conclusion of Law 4, which denied Susan's request for permanent alimony or a lump sum alimony award, reflects an abuse of discretion and is wrong because it was contrary to statutory and decisional law governing alimony and created a situation where Susan would be forced to spend down her assets post-divorce;

(4)     The Family Court erred in awarding Gerald a credit in the amount of $186,000 for his one-half interest in the Colorado property because it was inconsistent with the evidence and was mathematically incorrect;

(5)     Conclusion of Law 6(b), which awarded Gerald the $186,000 credit for the Colorado property, is clearly erroneous and wrong because it was inconsistent with the evidence and was mathematically incorrect;

(6)     The Family Court erred in awarding Gerald a $114,500 credit for the Fiji property because: (a) it was inconsistent with the evidence and mathematically incorrect; (b) the evidence did not establish the date of divorce fair market value of the Fiji Property; and (c) Gerald consistently maintained prior to the trial that the fair market value of the Fiji Property was $80,000 and should have been barred from advocating a different value at trial;

(7)     Conclusion of Law 6(c), which awarded Gerald the $114,500 credit for the Fiji property, was clearly erroneous and wrong because: (a) it was inconsistent with the evidence and mathematically incorrect; (b) the evidence did not establish the date of divorce fair market value of the Fiji Property; and (c)

Gerald consistently maintained prior to the trial that the fair market value of the Fiji Property was $80,000 and should have been barred from advocating a different value at trial;

(8) The Family Court erred when it ordered Gerald to pay Susan a $249,000 equalization payment because it was inconsistent with the evidence and mathematically incorrect; and

(9) Conclusion of Law 6(d), which ordered Gerald to pay Susan a $249,000 equalization payment, is clearly erroneous and wrong because: (a) it was inconsistent with the evidence and mathematically incorrect; (b) the evidence did not establish the date of divorce fair market value of the Fiji property; and (c) Gerald consistently maintained prior to the trial that the fair market value of the Fiji Property was $80,000 and should have been barred from advocating a different value at trial under the doctrines of judicial admission and judicial estoppel.

III.    APPLICABLE STANDARDS OF REVIEW

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citations omitted).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Inoue v. Inoue, 118 Hawai'i 86, 93, 185 P.3d 834, 841 (App. 2008) (internal quotation marks, citations, and brackets omitted).

IV.  DISCUSSION

    A.  Alimony Award (Points of Error 1-3)

Susan contends that the Family Court abused its discretion when it awarded alimony for a three-year period and denied Susan's request for higher periodic alimony, a permanent alimony award, or a lump sum alimony award. Specifically, Susan argues that the Family Court abused its discretion because

> it was contrary to statutory and decisional law governing alimony and created a situation where Susan would be forced to spend down her assets post-divorce in order to pay her routine living expenses and to maintain her standard of living, and thereby deplete post-divorce the resources that would be available for her support when she was of retirement age in 12-13 years, while allowing Gerald to live comfortably using only his current income during the years until he was of retirement age in 9-10 years.

In divorce cases, a family court may compel a party to provide for the support and maintenance of the other party under Hawaii Revised Statutes (**HRS**) § 580-47 (2006).  HRS § 580-47 provides in relevant part:

> In addition to any other relevant factors considered, the court, in ordering spousal support and maintenance, shall consider the following factors:
> (1) Financial resources of the parties;
> (2) Ability of the party seeking support and maintenance to meet his or her needs independently;
> (3) Duration of the marriage;
> (4) Standard of living established during the marriage;
> (5) Age of the parties;
> (6) Physical and emotional condition of the parties;
> (7) Usual occupation of the parties during the marriage;
> (8) Vocational skills and employability of the party seeking support and maintenance;
> (9) Needs of the parties;
> (10) Custodial and child support responsibilities;
> (11) Ability of the party from whom support and maintenance is sought to meet his or her own needs while meeting the needs of the party seeking support and maintenance;
> (12) Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made; and
> (13) Probable duration of the need of the party seeking support and maintenance.

The Hawai'i Supreme Court has consistently stated that HRS § 580-47 confers "wide discretion upon the family court." See, e.g., Gussin v. Gussin, 73 Haw. 470, 479, 836 P.2d 484, 489 (1992). However,

> in adjudicating the rights of parties to a divorce, the family court strives for a certain degree of uniformity, stability, clarity or predictability in its decision-making and thus [family court judges] are compelled to apply the appropriate law to the facts of each case and be guided by reason and conscience to attain a just result. The partnership model is the appropriate law for the family courts to apply when exercising their discretion in the adjudication of property division in divorce proceedings.

Tougas v. Tougas, 76 Hawai'i 19, 28, 868 P.2d 437, 446 (1994) (citations, internal quotation marks, and brackets omitted).

With respect to the alimony award, the Family Court stated at trial:

> Regarding the alimony. There's been a request through Ms. Kong that you're asking for a lump sum or permanent alimony based upon request that you want to provide for the children's expenses and college funds and, therefore, you're asking for $8,000.00 a month, which is half of what [Gerald] receives for his disability payments.
>
> The Court finds that the alimony should not be permanent in nature, although I do recognize [Susan's] age and the fact that this was a long marriage, 30 something years, and that she essentially although was working at some probably short time when they first got married at some department store, she was essentially a housewife and mother.
>
> But, again, things change. That's how life is. Things change. It can not always stay the same. So right now alimony is at $3,000.00 a month. That will continue at $3,000.00 a month and will continue for about three years. If you add up the total, $3,000.00 a month for three years is like $108,000.00. So that's substantial, even considering that the request was for $8,000.00 a month for ten years or for permanent. That's almost a million dollars. So I'm not awarding that.
>
> The Court's also considering the fact that all these other properties are being awarded to [Susan], the Colorado property, the Fiji property, and the equalization payment as far as the marital residence, that will be a substantial amount. So that can also be used in whatever way [Susan] deems fit as far as her own retirement or whatever her financial needs are.
>
> So, as far as the -- like I said, the children's trust accounts will remain in the children's names. So because I'm not awarding a permanent alimony or a lump sum alimony

for the college education, the children, again, I'm going to put that burden on [Gerald], actually because he's the one -- because he has physical and legal custody, he will make the decisions regarding that and that will be at his expense.

He's entitled to child support because I am awarding child support -- I mean custody to [Gerald], so essentially [Susan], by law, would owe him child support. But I think perhaps, Mr. Ragan, if you're [sic] client's agreeable, we can forego him being paid child support by [Susan], based upon the Court's finding of the alimony payments for three years, which is substantially less than what is being asked for. I think you'd be agreeable to that, in lieu of the alimony, which is being awarded here that he not collect child support[.]

In this case, the Family Court considered the relevant factors enumerated in HRS § 580-47, and applied them to the facts of this case. In denying Susan's request for higher periodic alimony, a permanent alimony award, or a lump sum alimony award, the Family Court recognized Susan's age, the duration of the marriage, and the fact that Susan was "essentially a housewife and mother" during the marriage. See HRS §§ 580-47(a)(3), (5) and (7). However, the Family Court emphasized that Gerald was granted custody of the couple's minor children and child support responsibilities would be at his expense. See HRS § 580-47(a)(10). The Family Court also considered the fact that Susan was being awarded the Colorado property, the Fiji property and an equalization payment for the Maui property as part of the Divorce Decree. See HRS §§ 580-47(a)(1) and (12). Since HRS § 580-47 confers wide discretion upon the Family Court, and in light of the factors weighed by the Family Court, we conclude that the Family Court did not abuse its discretion in awarding Susan an alimony award of $3,000 per month for three years.

B. Equalization Payment (Points of Error 4-9)

Susan argues that the Family Court's calculation of the real property equalization payment was wrong because of mathematical errors. It should be noted that Susan has pointed out one mathematical error that is favorable to her position with respect to the Fiji property, one that is unfavorable to her

position with respect to the Colorado property, and a further alleged error concerning the $50,000 advance made to Susan during the pendency of the proceedings.

### 1.  Colorado Property

In Finding of Fact 28(b), the Family Court found that the "divorce appraised fair market value was $373,000" for the Colorado property.  In Conclusion of Law 6(b), the Family Court awarded the Colorado property to Susan, "subject to a credit in Gerald's favor in the amount of $186,000 for his one-half (½) interest in that property."

Conclusion of Law 6(b) is clearly erroneous because one-half of $373,000 is $186,500 and not $186,000.  Thus, as Susan points out, Gerald should have been credited with $186,500 for his one-half interest in the Colorado property.

### 2.  Fiji Property

Susan argues that the Family Court erred in awarding Gerald a $114,500 credit for the Fiji property because:  (a) it was inconsistent with the evidence and mathematically incorrect; (b) the evidence did not establish the date of divorce fair market value of the Fiji Property; and (c) Gerald consistently maintained prior to the trial that the fair market value of the Fiji Property was $80,000 and should have been barred from advocating a different value at trial.

"Hawai'i has consistently employed fair market value appraisals to determine the value of property to be divided in a divorce action."  Teller v. Teller, 99 Hawai'i 101, 113, 53 P.3d 240, 252 (2002) (citation omitted).  "Market value is defined as the value in money of any property for which that property would sell on the open market by a willing seller to a willing buyer."  City and County of Honolulu v. Steiner, 73 Haw. 449, 450, 834 P.2d 1302, 1304 (1992).  The Hawai'i Supreme Court has recognized that "there must be competent evidence of value to support the court's division of property."  Booth v. Booth, 90 Hawai'i 413,

416, 978 P.2d 851, 854 (1999) (citation omitted). However, a party's failure to provide the court with evidence of market value leaves the court discretion to review the full record to determine an equitable value. Teller, 99 Hawai'i at 115, 53 P.3d at 254. In addition, the Hawai'i Supreme Court has acknowledged that when "a party does not offer evidence of an asset's value, the party cannot complain as to the disposition of that asset by the court." Booth, 90 Hawai'i at 416, 978 P.2d at 854 (citation omitted).

In this case, the Family Court in Finding of Fact 28(c) states that the Fiji property's "date of divorce fair market value was undetermined." A review of the entire record reveals various estimates as to the Fiji property's value. Gerald's May 3, 2007 and September 26, 2007 Asset and Debt Statements list the current gross value of the Fiji property at $80,000.[2] In contrast, Gerald's June 13, 2008 Asset and Debt Statement lists the current gross value of the Fiji property at $225,000. Susan does not list any current gross value for the Fiji property on her October 22, 2007 Asset and Debt Statement. Susan's June 17, 2008 Asset and Debt Statement lists the current gross value of the Fiji property as TBD, meaning to be determined. At trial, when asked how much he initially purchased the Fiji property for, Gerald testified: "I think it was about two and a quarter. 225,000."[3]

In the Divorce Decree, the Family Court seems to have adopted the purchase price and/or Gerald's $225,000 estimate of the current gross value, as the current gross value of the Fiji

---

[2]    Gerald's May 3, 2007, September 26, 2007, and June 13, 2008 Asset and Debt Statements list the cost of the Fiji property as $200,000.

[3]    During the course of the trial, the Family Court stated that the "Fiji property is appraised at somewhere around $275,000[.]" However, it appears that this statement was mistaken because, subsequently, in Finding of Fact 28(c) the Family Court stated that Susan and Gerald were unable to have the Fiji property appraised.

property. However, the court made a mathematical error in calculating the $114,500 equalization payment:

> [Susan] is awarded the 80 acre property located at the Fiji Islands that is listed on [Gerald's] Asset and Debt Statement filed on June 13, 2008 as being titled in [Gerald's] sole name and having current gross value of $225,00) [sic], subject to all indebtedness owed on account of the use and ownership thereof. [Gerald] shall execute a Quitclaim Deed to transfer all of his interest in said property to [Susan] within thirty (30) days of the filing of this divorce decree. [Gerald] is credited $114,500 as an equalization payment for his 100% equity interest in the real property.

We note that Susan failed to provide the Family Court with any evidence of the value of the Fiji property. Therefore the Family Court did not err in determining that $225,000 was an equitable value for the Fiji property based on the evidence before the court. The Family Court nevertheless clearly erred in Conclusion of Law 6(c) by awarding Gerald a $114,500 credit for his one-half interest in the Fiji property because one-half of $225,000 is $112,500. The Family Court should have issued Gerald a $112,500 credit and not a $114,500 credit.[4]

---

[4] We are not persuaded by Susan's argument that Gerald should have been precluded from changing his position with regard to the current fair market value of the Fiji property under the judicial admission doctrine and judicial estoppel doctrine. A judicial admission is "a formal statement, either by a party or his or her attorney, in the course of a judicial proceeding that removes an admitted fact from the field of controversy. It is a voluntary concession of fact by a party or a party's attorney during judicial proceedings." Lee v. Puamana Community Ass'n, 109 Hawai'i 561, 573, 128 P.3d 874, 886 (2006) (internal quotation marks, brackets and citations omitted). Susan cites no authority for the proposition that a value estimate contained in a party's Asset and Debt Statement constitutes this sort of admitted fact. Pursuant to the judicial estoppel doctrine, a "party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action." Lee, 109 Hawai'i at 576, 128 P.3d at 889 (citations omitted). It does not appear that Gerald obtained any unfair advantage through his revised estimates of value because it appears that the Family Court relied primarily on the purchase price when it equitably determined the value of the Fiji property. Although, in a footnote, Susan cites a finding to the effect that she did not know the property's location and was unable to have it appraised, Susan does not raise as error any ruling foreclosing discovery on this issue prior to trial.

3.    Susan's $50,000 Advance

Susan argues that:

> the $50,000 advance that Susan received pursuant to the
> March 24, 2008, *Pre-Trial Stipulation & Order* was deducted
> 100% from her share of the real property in the equalization
> calculation, disregarding that the advance was marital
> property and that one-half (½) of that advance was therefore
> from Susan's share of the marital estate.

Pursuant to the Stipulation, Susan was "advanced the sum of $50,000 from her *final divorce property division* to pay her ongoing expenses for housing, health care, and attorneys' fees and costs."   In divorce cases, family courts may order a party to make an equalization payment in order to equally divide and distribute the estate of the parties.  See HRS § 580-47.  To correctly calculate the equalization payment and ensure Gerald and Susan would be left with equal assets, the Family Court took into account the fact that Susan had already received $50,000 from her "final divorce property division" award.  This appears to be consistent with the parties' stipulation.  Therefore, we conclude that the Family Court did not err in allocating the $50,000 to Susan as part of the equalization calculation.

4.    Susan's $249,000 Equalization Payment

Having found that the Family Court clearly erred in Conclusion of Law 6(b) and Conclusion of Law 6(c) because of mathematical errors, we conclude that the Family Court clearly erred in Conclusion of Law 6(d), which awarded Susan a $249,000 equalization payment.  On remand, the Family Court is instructed to recalculate the equalization payment.  The Family Court should (1) increase Gerald's credit for the Colorado property to $186,500; (2) decrease Gerald's credit for the Fiji property to $112,500; and (3) increase the final equalization payment to

$251,000.   The $251,000 figure is based on the following calculation:

|                    | Gerald                   | Susan                    |
|--------------------|--------------------------|--------------------------|
| Maui property      | $1,200,000               | $600,000 equalization    |
| Colorado property  | $186,500 equalization    | $373,000                 |
| Fiji property      | $112,500 equalization    | $225,000                 |
| Advance to Susan   |                          | $50,000                  |
| Sub-Total          | $1,499,000               | $1,248,000               |

Final Equalization Payment: ($1,499,000 - $1,248,000) = $251,000

V.   CONCLUSION

For these reasons, we affirm in part and vacate in part the Family Court's August 27, 2008 Divorce Decree.  We remand the case for further proceedings consistent with this memorandum opinion.

DATED:   Honolulu, Hawai'i, June 15, 2010.

On the briefs:

Robert M. Harris
and Jacqueline Kong
for Defendant-Appellant/
Cross Appellee

Peter Van Name Esser
and Stuart Eric Ragan
for Plaintiff-Appellee/
Cross Appellant

Presiding Judge

Associate Judge

Associate Judge