Electronically Filed
Supreme Court
SCWC-11-0001060
15-MAY-2017
07:58 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

ANTHONY K. SELVAGE, Respondent/Plaintiff-Appellee,

vs.

LAURA MOIRE, Petitioner/Defendant-Appellant.

SCWC-11-0001060

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0001060; FC-D NO. 08-1-0252)

MAY 15, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case requires us to review the Family Court of the Third Circuit's (family court) division and distribution of marital property during the divorce action between Anthony Selvage (Selvage), a 71-year-old retired musician and trust fund beneficiary, and Laura Moire (Moire), a 56-year-old emergency room doctor.

After prolonged and contentious divorce proceedings, the family court[1] awarded two parcels of real property and over $2.8 million in inheritance monies and other assets--virtually all of the spouses' property--to Selvage, who was also receiving court-ordered spousal support from Moire. The family court stated in its oral ruling that it found Selvage the more credible party, whereas Moire provided no credible evidence of either her assets or debts, and repeatedly ignored or disobeyed court orders. Furthermore, the court found that Moire was younger than Selvage, a doctor, and earned over $6,000 a month; Selvage, on the other hand, was unemployed, about 15 years older, and living off of social security and his inheritance. Thus, the court found that Moire had significantly higher future earning potential than Selvage.

On appeal, the Intermediate Court of Appeals (ICA) affirmed the family court's decision in a Summary Disposition Order (SDO), reasoning that the family court did not abuse its discretion in declining to deviate from the partnership model of property division. In a concurring and dissenting opinion, Judge Lisa Ginoza concluded that there were sufficient valid and

---

[1] The Honorable Melvin H. Fujino presided.

relevant considerations[2] such that the family court should have exercised its discretion and deviated from the partnership model.

We conclude that remand to the family court is necessary. The vast financial inequity left between the parties constitutes an equitable consideration that may have warranted a deviation from the partnership model of marital property division. The family court's written decision does not adequately indicate that it considered Moire's proposed equitable considerations justifying deviation, and it is unclear why the family court rejected Moire's request to deviate from the partnership model.

## I. Background

### A. Divorce Proceedings in Family Court

The parties were married on December 22, 1985, and separated on December 22, 2006. Selvage filed a Complaint for Divorce on August 27, 2008. The complaint alleged that the marriage was "irretrievably broken," that Selvage and Moire had two adult daughters together who were still dependent on them for support while attending college on the mainland, and that Selvage was entitled to alimony from Moire. Selvage stated that he was retired and living in Mountain View on Hawaiʻi island, and that Moire was a medical doctor living in Topanga, California.

---

[2] In its SDO, the ICA used the term "VARC" to refer to "valid and relevant considerations," which warrant deviation from the partnership model. In this opinion, we instead refer to those valid and relevant considerations as "equitable considerations" justifying deviation.

In his first asset and debt statement, Selvage indicated that he owned two properties:  an apartment in Topanga, California, worth $600,000 that he owned individually and rented out, and a house in Mountain View, Hawaiʻi, worth $390,000 that he owned jointly with Moire.  Selvage's financial assets totaled $263,000.[3]  Selvage further listed his art collection and his musical instruments, which he valued at about $10,000 each.  He also noted his status as a beneficiary of a Sternoff Trust worth $2-3 million.

On August 29, 2008, Selvage filed a motion requesting a fluctuating amount to pay Moire's bills and $1,600 per month in spousal support "to make ends meet without [him] drawing down on [his] inheritance as [he has] no retirement" or income beyond social security of $563 per month.  He explained that he is "a minority beneficiary of a trust established by [his] parents, yet [has] had to loan [his] Wife's corporation approximately $55,000 to pay for the financial shortfalls."

In July 2009, Selvage filed updated Income and Expense and Asset and Debt Statements.  He noted $11,200 in cash and bank accounts, as well as $116,500 in inheritance funds, and $12,000 in securities held jointly with Moire.[4]  He estimated that the value of both properties had fallen significantly.  According to

_____

[3]     Selvage also stated that held $18,000 in securities jointly with Moire, who had $19,000 in securities of her own.

[4]     He also noted that Moire had $23,000 in securities of her own.

4

Selvage, the value of the Sternoff Trust had almost doubled, and he was debt-free, but he alleged without explanation that Moire owed $39,500 to him personally and another $79,000 to the Sternoff Trust.

Moire shortly thereafter filed her own income, expense, asset, and debt statements with the family court. Moire stated that she only had a $1,000 monthly income and $2,835 in "regular monthly expenses." Moire's estimated real property values were significantly different from Selvage's: she estimated that the Topanga property was worth $1.2 million (where Selvage declared that it was worth $450,000), and the Hawaiʻi island property was worth $500,000 (where Selvage declared that it was worth $300,000). Moire listed several outstanding debts, including credit card debts of $36,181.

At the following court hearing, Selvage's attorney submitted a request for spousal support, alleging that Moire was "not being forthright in her filings with the court" and was stringing the trial along "waiting for [Selvage] to die[.]" Moire's attorney responded that his understanding was "that Mr. Selvage is the beneficiary of a rather large trust and he can withdraw as he wishes." He also added that although Selvage correctly identified Moire's "gross numbers," he failed to take into account the fact that the nature of her work as a traveling doctor required more expenditures like airline transportation, temporary housing, rental cars, and "more expensive food." He

also added that Moire had lost her full-time job at Kahuku Hospital, and the lack of jobs available in Hilo put her in a "financial scramble."

The court stated that "it is not clear to me that Dr. Moire has been all together straight forward [sic] with the Court." The court also found that Selvage's income, "although not nonexistent, [is] quite limited[,]" and "Dr. Moire has a vastly more significant income of earning capacity. And again, the precise extent to which she is generating income is difficult to assess." The court then ordered Moire to pay temporary spousal support to Selvage in the amount of $1,500 a month, with Selvage "entitled to a credit back to the date of the initial filing[,]" totaling $22,500.

Several months later, Selvage filed motions asserting that Moire had not paid him any court-ordered spousal support and that he needed financial assistance from Moire to help fund their daughter's college tuition and living expenses. After a hearing on Selvage's motions, the court entered judgment in favor of Selvage and against Moire for $36,000 in delinquent spousal support and ordered the parties to "equally share the expenses for [Daughter]'s college expenses.

In his second updated income and expense statement, Selvage listed $29,010 in personal bank accounts, $6,587 in a Bank of Hawai'i account belonging to Daughter, and $336,686 in a Wells Fargo Portfolio Management Account. He also listed

6

$1,566,227 in the Sternoff Trust. Selvage stated that the value of the Topanga property had risen from $450,000 to $490,000, but the value of the Mountain View property had fallen even farther, from $300,000 to $135,000.

Moire also filed an updated Income and Expense Statement, in which she listed her total monthly income as $3,100 and her total monthly expenses as $10,514 (including $7,633 in monthly debt servicing payments). Moire's and Selvage's statements continued to differ drastically. She listed the Topanga property as valued at $800,000, but listed no value for the Mountain View property, stating instead that the property had not been appraised. Her debts jointly held with Selvage included $5,223.58 to the State of Hawai'i in taxes; $13,472 for their daughter's Chase credit card; $47,500 to "NAMASTE"; and $20,000 in a 1999 tax lien to the State of California. Her individual debts included $34,795 in credit card debt and $19,000 to "E.M.H.P."

Relevant to the issues at hand, Selvage testified to the following during the trial: that he wanted Moire to equally share Daughter's college expenses with him, that he had put about $112,000 over time from his trust into Moire's corporation and had only received $17,000 back, that he had recently received a "bulk figure" of $1,540,000 in inheritance, that he spent $135,000 in arbitration and $225,000 in attorneys' fees in litigation over his inheritance with his half-sister through

"owner draws" on his trust account, that Moire came into the marriage with "around $90,000" of student loan debt, and that Moire had removed Selvage's posters and two of his violins from the Topanga property.

Moire testified that although she did not recall the exact amount of student loan debt, it had been much less than the $90,000 Selvage had testified to, and that at least $30,000 of the debt had been paid off as a personal gift to her.[5] Moire further testified that she had received $276,000 in compensation for a hand injury, which she later invested in extensive construction on the Mountain View property. In addition, Moire testified that half of the Mountain View property was purchased "out of [her] earnings." She denied that she had removed the violins, and she claimed to have left the posters in a storage area. When asked why Moire had not included any documentation for her claimed credit card debt, she testified that she had, in fact, supplied her "several different attorneys" with the relevant documents. Finally, Moire testified that there was at least $200,000 worth of personal and joint property within the Mountain View home, but that she had been unable to appraise any of it because of a restraining order against her.

---

[5] In its Findings of Fact, the family court found that, upon the date of marriage, Moire had $30,000 in student debt. The court made no finding regarding Moire's testimony that she had received a large gift from Selvage's mother to pay off that debt.

After the trial, Selvage filed a Proposed Findings of Fact (FOF), Conclusions of Law (COL), and Decision of the Court. On the same day, Moire filed her Written Closing Argument in place of a proposed decision. Moire argued that she should be awarded the Hawaiʻi property because it was bought during the marriage, and it would be equitable for both parties to have residences. She also argued that the court should deny Selvage's claim seeking Category 3 reimbursement for the money he spent on litigation over his trust inheritance. She argued that Selvage's interest in the trust vested when his mother passed away in 2004. According to Moire, "any appreciation of income from that point forward would be construed as category 4 property subject to division[.]"

Moire also argued that deviation from Hawaii's standard partnership model of property division was warranted given the circumstances of this case and "the condition that each party will be left in at the conclusion of this case." Noting that "Hawaiʻi law requires the distribution to be equitable, and does not limit the Court to an equal division," she added that "this was a very long marriage with substantial assets at stake. Wife worked and paid the bills, and when could not, paid them with her disability settlement. . . . If Husband's requests are followed, it will result in Husband receiving all, or a disproportionate share of the marital estate."

9

The court ruled against Moire on the majority of the issues.  Specifically, the court stated that it found "[Selvage] to be more--[Selvage]'s testimony to be credible.  And [found] that [Moire]'s just reference [sic] to the Income and Expense and Asset and Debt Statement is not to be [sic] sufficient for this Court to award her any type of credit regarding those accounts as well as debts."  The court made no comment on Moire's request for deviation in her closing argument and did not explain how it arrived at its property divisions.

In its FOFs relevant to this appeal, the court determined that Moire was a licensed physician with a monthly income of $6,666, and Selvage was unemployed.  The court repeatedly stated that it declined to assign debts or assets to Moire because it did not find her testimony credible and because the court had not received evidence of them.  The court also found that Moire's failure to provide a password for a website to Selvage was "another example of how [Moire] fails to cooperate and ignores court Orders."  Regarding Moire's student loans, the court found the value at $30,000.  The court further found that Selvage had been gifted $251,940 from his parents, which had been used for "marital expenses as as [sic] well as to supplement and support [Moire]'s business when [Moire] failed to have sufficient funds in her professional corporation."  The final relevant FOF was that Selvage had received inheritance in the amount of

10

$2,270,199.90 and been gifted personal property valued at $52,000 in October 2010, which "is [Selvage]'s category three claim."

The only relevant COLs were the following:

> **B.  Property Division Chart/Allocation of Assets/Debts/Equalization Payment:**
> All Category 1 and Category 3 assets and debts are allocated as noted in Property Division Chart attached hereto as Exhibit 1.  It should be noted that for the purposes of this chart, the Court included assets/debts of [Moire] even though there was no evidence of such asset and debt other than the mere reference in [Moire]'s recent asset/debt statement.

> **C.  Alimony/Spousal Support:**  [Moire] has a judgment of $36,000 for spousal support arrearage [previously entered on August 24, 2010], which is noted in FOF 21.  [Moire] owes a present balance of $37,400 to [Selvage] pursuant to FOF 26.  Alimony is terminated as of the date of trial.

The court then issued its Divorce Decree and distributed the relevant property as follows:  Selvage was awarded the Topanga property "inasmuch as [he] owned this property prior to marriage[,]" the Mountain View property, and all interest in the Sternoff Trust.  The family court also awarded Selvage an equalization payment from Moire in the amount of $29,219.76.

Based on the family court's Property Division Chart, it appears that Moire's equalization payment was based on the court's calculation that Moire was responsible for a $34,000 decrease in net value of the partnership during the marriage, based on $30,000 in student loans and $4,000 for Selvage's art collection posters and musical instruments that Moire removed

11

from the Topanga property during the time leading up to the trial. The family court appears to have utilized a formula located at the bottom of the chart, which resulted in Moire receiving a total value of $37,059.11.[6] When the alimony judgment against Moire for $37,400 is factored in, she is essentially left no assets or cash and owes Selvage $340.89.

## B. Moire's Appeal and the ICA's Decision

In her appeal to the ICA, Moire alleged three points of error by the family court:[7]

> (1) The trial court erred in failing to deduct [Selvage's] costs of litigation from the award of Category 3 credit for [Selvage].
>
> (2) The trial court erred in counting the trust income and interest [Selvage] received from 2005-2010 after his mother's 2004 death as a Category 3 asset.
>
> (3) The trial court erred in failing to deviate from the partnership model of divorce. . . . The trial court made no findings at all about whether there should be an equitable deviation, made no equitable deviation, and followed the partnership model to the letter.

---

[6]  The bottom of the chart provides certain formulas for calculating awards, one of which indicates that to calculate an equalization payment, the family court subtracts a party's "Capital Contributions" from the "Proposed Division of Marital Partnership Property." Because the court found that Moire's "Capital Contribution" to the partnership was actually a $34,000 loss, it added $34,000 to the $66,278.87 that was Moire's "Proposed Division of Marital Partnership Property," giving her a "Partnership Profit" of $100,278.87. In contrast, the family court found that Selvage contributed $2,754,030.65 in total to the Partnership, which it subtracted from his proposed division of $2,795,870.00, leaving him with $41,839.95 in Partnership Profits. To equalize this amount, the family court ordered Moire to pay $29,219.76, leaving each party with an "Equal Division of Profits/Losses" of $71,059.11.

[7]  Moire asserted four points of error in her opening brief, but after reviewing Selvage's response to her third point of appeal, she withdrew Point 3 in her reply brief. Thus, this point is omitted from this discussion.

In its SDO and subsequent Judgment, the ICA affirmed the family court's Findings of Fact, Conclusions of Law, and Divorce Decree.  On the first point of error, where Moire argued that the $385,000 that Selvage spent in litigation with his half-sister "did not 'contribute' to the couple's marital partnership and should therefore be deducted from Selvage's Category 3 Credit," the ICA explained that "Hawaiʻi courts have never held that an inheritance's [net market value (NMV)] reflects the inheritance minus any acquisition or maintenance costs. . . . Hawaiʻi law requires only that, if all valid and relevant considerations are equal, Category 3 NMVs are repaid to the contributing spouse."  (Quoting Hussey v. Hussey, 77 Hawaiʻi 202, 207, 881 P.2d 1270, 1275 (App. 1994), overruled on other grounds by State v. Gonsalves, 91 Hawaiʻi 446, 984 P.2d 1272 (App. 1999) (emphasis added)).

The ICA noted that "Selvage paid the expenses with trust funds, which he requested and received from the trust." The ICA thus concluded that "the Family Court did not abuse its discretion in declining to deduct the litigation expenses from Selvage's Category 3 Credit Award[.]"

On Moire's second point of error, the ICA concluded that although Moire correctly stated the point of law, she "fail[ed] to establish that the trust distributions in question, although denominated as 'Trust income,' represented anything

13

other than periodic distributions to Selvage of the trust corpus." Therefore, the "Family Court did not abuse its discretion in not excluding any increase in the value of the inheritance corpus before its acquisition by Selvage."

As to Moire's third point of error, the ICA acknowledged that the "Family Court did not make an express finding regarding inequity[.]" However, after considering the family court's findings that Moire failed to provide credible evidence on this point, the ICA "[could not] say that the Family Court erred in not finding the alleged inequity to be [an equitable consideration justifying deviation]" because no authority "requires a court to enter explicit findings if it finds no [equitable considerations] that warrant deviation" from the partnership model.

Judge Ginoza concurred with the majority opinion on Moire's first and second points of error, but dissented on the third point. According to the dissent, when deciding the division and distribution of marital partnership property, the family court is required to:

> (1) find the relevant facts; start at the Partnership Model Division and (2)(a) decide whether or not the facts present any valid and relevant considerations authorizing a deviation from the Partnership Model Division and, if so, (b) itemize those considerations; if the answer to question (2)(a) is "yes," exercise its discretion and (3) decide whether or not there will be a deviation; and, if the answer to question (3) is "yes," exercise its discretion and (4) decide the extent of the deviation.

14

(Quoting Jackson v. Jackson, 84 Hawaiʻi 319, 332, 933 P.2d 1353, 1366 (App. 1997)).  Judge Ginoza emphasized that in determining whether any equitable considerations justify deviation, the proper considerations are "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case."  Id. at 333, 933 P.2d at 1367 (emphasis in original) (quotation and block format omitted).  The dissent contended that the vast disparity in the parties' circumstances after the divorce, and the limited assets with which Moire will be left, constitute equitable considerations warranting that deviation be considered.[8]

## C.  Moire's Application for Writ of Certiorari

Moire timely filed her application for writ of certiorari on September 29, 2015.  Moire presents essentially the same three issues that she presented to the ICA:

> I.  Did the ICA gravely err in refusing to deduct inheritance-related litigation expenses paid from Category 3 property from [Selvage]'s Category 3 credit award?
>
> II.  Did the ICA gravely err in refusing to recognize "trust income" from [Selvage]'s mother's trust as Category 4 property?

---

[8]  Judge Ginoza noted that Selvage received a net award of $2,825,089.79 (including both of the couple's residences), while Moire received a net award of $37,059.11.

15

III.   Did the ICA gravely err in refusing to remand
       this case to the family court to make a
       determination regarding whether there should be
       a deviation from the partnership model
       applicable to property division?

## II. Standard of Review

## A.   Property Division

"We review the family court's final division and distribution of the estate of the parties under the abuse of discretion standard, in view of the factors set forth in [Hawai'i Revised Statutes (HRS)] § 580-47[9] and partnership principles." Tougas, 76 Hawai'i 19, 26, 868 P.2d 437, 444 (1994) (internal quotation marks, citation, and footnote omitted). The family

---

[9]     HRS § 580-47 provides in relevant part:

        In addition to any other relevant factors considered,
    the court, in ordering spousal support and maintenance,
    shall consider the following factors:

    (1)   Financial resources of the parties;
    (2)   Ability of the party seeking support and maintenance
          to meet his or her needs independently;
    (3)   Duration of the marriage;
    (4)   Standard of living established during the marriage;
    (5)   Age of the parties;
    (6)   Physical and emotional condition of the parties;
    (7)   Usual occupation of the parties during the marriage;
    (8)   Vocational skills and employability of the party
          seeking support and maintenance;
    (9)   Needs of the parties;
    (10)  Custodial and child support responsibilities;
    (11)  Ability of the party from whom support and maintenance
          is sought to meet his or her own needs while meeting
          the needs of the party seeking support and
          maintenance;
    (12)  Other factors which measure the financial condition in
          which the parties will be left as the result of the
          action under which the determination of maintenance is
          made; and
    (13)  Probable duration of the need of the party seeking
          support and maintenance.

16

court's determination of whether facts present equitable considerations authorizing a deviation from the partnership model division is a question of law that this court reviews under the right/wrong standard of appellate review. Gordon v. Gordon, 135 Hawaiʻi 340, 348, 350 P.3d 1008, 1016 (2015) (citation omitted).

### III.  Discussion

The ICA appropriately affirmed the family court's refusal to deduct costs of litigation from Selvage's separate inheritance award as well as the family court's determination that Selvage's inheritance did not generate partnership income. However, the financial disparity between the parties constituted an equitable consideration justifying deviation, such that the family court abused its discretion by not considering whether to deviate from the Partnership Model.

### A.  Selvage's Category 3 Credit Award Was Properly Calculated.

The family court did not abuse its discretion when it refused to deduct inheritance-related expenses from Selvage's separate Category 3 credit award. "Hawaiʻi law follows a framework based on partnership principles for the division of marital partnership property during divorce proceedings." Gordon, 135 Hawaiʻi at 344, 350 P.3d at 1012. In divorce cases, our family courts utilize five categories of net market values (NMV) during property division:

> Category 1. The [NMV], plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property

17

> that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
>
> Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DOCOEPOT [date of the conclusion of the evidentiary part of the trial].
>
> Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
>
> Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.
>
> Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

Tougas, 76 Hawai'i at 27, 868 P.2d at 445 (internal citations omitted).

The NMVs "in Categories 1 and 3 are the parties' 'capital contributions,' and pursuant to general partnership law, they are returned to each spouse." Kakinami v. Kakinami, 127 Hawai'i 126, 138, 276 P.3d 695, 707 (2012). Here, the fact that Selvage spent money from his inheritance on litigation expenses did not alter the date-of-acquisition NMV of his Category 3 property. See Tougas, 76 Hawai'i at 27, 868 P.2d at 445 (defining category 3 property as "[t]he date-of-acquisition NMV,

18

plus or minus, of property separately acquired by gift or inheritance during the marriage").

Under Hawaiʻi partnership law, "each partner is deemed to have an account that is credited with an amount equal to the money plus the value of any other property, <u>net of the amount of any liabilities</u>, the partner contributes to the partnership and the partner's share of the partnership profits[.]"  HRS § 425-120(a)(1) (emphasis added, list formatting omitted).  Thus, unless there is a debt against a particular capital contribution, expenditures from that capital contribution do not change its original NMV.[10]

All of the money that Selvage spent on litigation came from his inheritance trust funds.  Because Selvage was the one who contributed to the litigation expenses--not Moire--and because those expenses were paid with trust fund money constituting Category 3 property, the family court did not abuse its discretion in crediting that property back to him.

Additionally, Selvage did not spend hundreds of thousands of dollars in litigation to only obtain money for

---

[10]     We note that the instant case is distinguishable from <u>Hamilton v. Hamilton</u>, 138 Hawaiʻi 185, 378 P.3d 901 (2016).  In <u>Hamilton</u>, the family court determined that a husband's inheritance was Marital Separate Property and thus, analyzed the issue of whether marital assets were used to maintain that Marital Separate Property.  <u>Id.</u> at 192–93, 378 P.3d at 908–09.  Marital Separate Property is a narrow category of separate property that is excluded from the marital partnership, and thus, not subject to division.  <u>See id.</u> at 202, 378 P.3d at 918.  In contrast, the instant case involves Category 3 Marital Partnership Property, which is subject to division.  Thus, the facts of the instant case and <u>Hamilton</u> are distinguishable.

himself.[11]  Moire directly benefitted from the result of the litigation and Selvage's inheritance funds.  So did their daughters; notably, Daughter was still enrolled in college and dependent on her parents for her expenses.  Moreover, the family court found that Selvage "used those funds for marital expenses as well as to supplement and support [Moire's] business when [Moire] failed to have sufficient funds in her professional corporation."  Thus, the ICA properly found that the family court did not abuse its discretion when it awarded Selvage the entire amount of his inheritance as Category 3 property.[12]

## B.    Selvage's Category 3 Inheritance Did Not Generate Category 4 Income.

Moire argues that the ICA committed grave error in affirming the family court's ruling that the $597,330.59 that Selvage received as "trust income" from June 2005 to May 2010 should be classified as Category 3 property.  Moire asserts that because these payments were received before the corpus of the trust was distributed in 2010, they represent an "increase in value" of Category 3 property (the corpus) that should be categorized as Category 4 property and divided equally between Selvage and Moire.

---

[11]    Additionally, neither party disputed that the trust in its entirety would become marital partnership property.  Further, Moire does not argue that the litigation expenses were unreasonable or purposeless, or that the expenses occurred outside of the marital partnership.

[12]    Hamilton is also distinguishable in that Moire does not argue that amounts expended from Selvage's inheritance constitute gifts.

In response, Selvage argues that "Moire offers no authority that payments received by a spouse from a trust before the trust corpus is resolved constitute Category 4 marital assets that must be shared with the non-owning spouse." He also argues that "Moire offered no evidence that any of Selvage's Category 3 capital contributions between 2005 and 2010 generated any profits, or that these payments generated Category 4 income."

The ICA correctly concluded that the family court did not abuse its discretion when it refused to treat Selvage's trust income as a Category 4 asset. The family court found that Selvage "received the balance of the inheritance sometime in October 2010," totaling $2,270,199.90 in both income and corpus added together. That entire sum constituted Category 3 property. Therefore, Selvage should be awarded the entire interest in the Sternoff Trust as his "sole and separate property."

The ICA correctly stated that Moire "fail[ed] to establish that the trust distributions in question . . . represented anything other than periodic distributions . . . of the trust corpus." Although the distributions were classified as "trust income," this term does not fall within the meaning of Category 4 property, which only "includes the increase in the [NMV] of Category 3 property during the marriage[.]" Gordon, 135 Hawaiʻi at 349, 350 P.3d at 1017 (emphasis added). Nothing in the record indicates that the NMV of Selvage's inheritance increased during the marriage. In fact, the family court found

21

that, at the time of trial, the balance of Selvage's inheritance was $1,844,999.00, which reflects a decrease in value of $425,200.90 since October 2010. Thus, because Category 4 property is the increase in a Category 3 property's NMV during marriage, no Category 4 property can exist in this case.

Accordingly, without any evidence that the trust income or corpus earned interest or increased in net value after becoming part of the marital estate, the ICA did not err and the family court did not abuse its discretion in finding there was no Category 4 property related to Selvage's inheritance.

## C. The Inequitable Property Division Between The Parties Constituted An Equitable Consideration That Likely Warranted Deviation From The Partnership Model.

Moire argues that the family court should have deviated from the partnership model. She contends that the court's property division was not equitable because, after subtracting the spousal support judgment against her, she will be left with virtually nothing--but Selvage would be "awarded about $2.85 million[.]"[13] Moire further argues that although Selvage brought the Topanga property into the marriage, the property had been "sustained by marital assets[,]" including replacing a wall and mitigating smoke damage after a fire. Thus, awarding both residential properties to Selvage would be inequitable.

---

[13]    On appeal, Selvage's spousal support award is not challenged.

In response, Selvage's primary argument is that HRS § 580-47(a) "requires the family court to focus on the present and the future, not the past" (quoting Gordon, 135 Hawaiʻi at 353, 350 P.3d at 1021), and that "no other potential [equitable consideration justifying deviation] exists in this case, since Moire is younger, healthier, better educated, and possesses an obviously greater earning capacity, both now and in the future, than 71-year-old Selvage."

Family courts typically do not deviate from the partnership model without equitable considerations that justify doing so. See Jackson, 84 Hawaiʻi at 332-33, 933 P.2d at 1366-67. In Gordon, this court set forth the analysis a family court must follow under the partnership model of property division.

> The partnership model requires the family court to first find all of the facts necessary for categorization of the properties and assignment of the relevant net market values. Second, the court must identify any equitable considerations justifying deviation from an equal distribution. Third, the court must decide whether or not there will be a deviation, and in its fourth step, the court decides the extent of any deviation.

135 Hawaiʻi at 350, 350 P.3d at 1018 (citations and internal quotation marks omitted).

Here, the family court failed to comply with the second part of the Gordon analysis by identifying the disparate financial conditions in which the divorce left Selvage and Moire. Selvage received a net award of $2,825,089.79 and the couple's two properties, while Moire received a net award of $37,059.11

23

that was essentially wiped out by the alimony judgment against her. There is no indication from the record that the family court "identif[ied] any equitable considerations justifying deviation from an equal distribution[,]" despite Moire's request for deviation, and the ICA majority acknowledges that the "Family Court did not make an express finding regarding inequity[.]"

Gordon explains that in cases of inequity, the family court must consider the following circumstances to determine whether the situation warrants a deviation from the partnership model: "The respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." Id. at 352-53, 350 P.3d at 1020-21 (quoting HRS § 580-47(a) (2006)).[14]

The family court did not explain its rationale for ignoring Moire's request for deviation. It is therefore unclear to what extent the family court followed Gordon's requirement to consider the merits of the parties, the relative abilities of the parties, the condition that each party would be left in after the property division, or any other circumstances of the case.

_____

[14] Effective October 1, 2011, HRS § 580-47 was amended to also require the consideration of "the concealment of or failure to disclose income or an asset, or violation of a restraining order." See HRS § 580-47(a) (Supp. 2011). This amendment did not have an effect on the family court's November 16, 2011 Decree. See 2011 Haw. Sess. Laws Act 140, §§ 3, 5 at 356 (providing that although the Act had an effective date of October 1, 2011, it did "not affect . . . proceedings that were begun before its effective date").

24

The family court has "wide discretion" in determining whether circumstances justify deviation from the partnership model. Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 705. Nevertheless, given the vast differences in sums awarded to the two parties--over $2.8 million and two properties to one party and virtually nothing to the other party--the family court erred by not identifying any equitable considerations justifying deviation or explaining on the record the reasons for allowing the inequity beyond repeatedly stating that it did not find Moire's testimony credible.

In Gordon, the family court's findings were "incomplete" for lack of identification of the NMVs of properties at the date of marriage or their increase in value during the marriage. 135 Hawaiʻi at 350, 350 P.3d at 1018. Here, as in Gordon, the family court's findings are incomplete. Just as we could not adequately review the Gordon property division without understanding the court's rationale, we cannot adequately review the family court's actions in this case without a more complete explanation of the reasons for the family court's decision.

When assessing whether a situation warrants deviation from the partnership model, the family court must "focus on the present and the future, not the past." Id. at 353, 350 P.3d at 1021 (quoting Jackson, 84 Hawaiʻi at 333, 933 P.2d at 1367) (internal quotation marks omitted, emphasis in original). The family court here failed to adequately explain the "present and

25

the future" financial resources of the parties because the only relevant findings that the family court made were that Selvage was fifteen years older than Moire and was not currently employed, and that Moire is licensed to practice medicine in four states, has an "approximate monthly income [of] $6,666.00[,]" and significantly higher earning potential than Selvage.

Furthermore, <u>Gordon</u> held that a family court's property division is an abuse of discretion if it considers one spouse's misconduct to be a "valid and relevant consideration," instead of considering "the factors required by [HRS § 580-47]." 135 Hawaiʻi at 347, 350 P.3d 1015. Here, the family court did not explain why it declined to find an equitable consideration justifying deviation in the disparate awards, but it did frequently reiterate its concern with Moire's credibility, noting that Moire presented no "credible evidence" at trial regarding her assets or debts,[15] that she "continues not to abide by" an existing court order requiring her to provide Selvage with the password for his website, and that she "failed to provide any specific evidence or accounting of monies provided for" their

---

[15] The family court found that Selvage's appraisal values for the Topanga property were more accurate, and that Selvage's testimony was more credible regarding the value of art collection posters and instruments removed by Moire. According to the court, Moire failed to provide bank statements for her Bank of Hawaiʻi accounts, and Moire was not credible regarding the amount of her Category 1 student loans. The court further found that Moire provided no trial exhibits pertaining to five individual accounts, and as such, the accounts were awarded to her with no debt balance. Finally, the court held that there was no evidence of the existence of four joint debts claimed by Moire, and they were thus assigned to Moire with no credit or offset.

daughter. Just as the family court in <u>Gordon</u> erred by inappropriately focusing on the husband's financial misconduct, the family court here erred by focusing on Moire's lack of credibility as the primary justification for its decision. While the family court should assess credibility in determining factual matters in the record, it cannot punish a party for misconduct when deciding whether deviation from the partnership model is appropriate. <u>See</u> <u>Gordon</u>, 135 Hawaiʻi at 353, 350 P.3d at 1021 ("[D]eviation from the partnership model should be based primarily on the current and future economic needs of the parties rather than on punishing one party for [their] misconduct.").

Even though the family court determined that Moire had greater future earning potential than Selvage, that should not have been the end of its analysis. The vast disparity in the parties' circumstances after the divorce, and the limited assets with which Moire will be left, constitutes an equitable consideration justifying deviation, and therefore, the family court should have explicitly stated why it chose not to deviate from the partnership model.[16]

---

[16]   Moire appears to have approximately $140,000 of debt and essentially no monies remaining after the divorce, since her net award of $37,059.11 would be depleted by the alimony judgment against her. This constitutes an equitable consideration justifying deviation from an equal distribution when compared to Selvage's net award of $2,825,089.79 along with the couple's two properties. However, due to Moire's refusal to present "credible evidence" at trial, she may have additional unknown assets, which the family court may consider on remand in determining whether there will be a deviation, and if so, to what extent. If Moire continues to be unwilling to produce the necessary information regarding her pertinent assets, the family

(continued...)

### IV.  Conclusion

For the foregoing reasons, we hold that the family court erred in not identifying equitable considerations that could have justified deviating from the partnership model when the divorce left significant financial disparity between the spouses.  The family court further erred by not explaining why it rejected Moire's request to deviate from the partnership model.  Accordingly, we vacate in part the ICA's August 3, 2015 judgment on appeal and remand to the family court for determination of whether and to what extent it will exercise its discretion in deviating from the partnership model, and to enter appropriate findings on the record.

| | |
|---|---|
| Samuel P. King for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Peter Van Name Esser and Brian J. De Lima for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |



---

[16](...continued) court may consider other discovery measures to obtain production of the information.