**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000407
13-OCT-2021
01:52 PM
Dkt. 220 SO**

NO. CAAP-17-0000407

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


BETTY LOU SANCHEZ, Plaintiff-Appellee/Cross-Appellant, v.
GERALD M. SANCHEZ, Defendant-Appellant/Cross-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(FC-D NO. 02-1-0149)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Wadsworth and Nakasone, JJ.)

This appeal arises out of divorce proceedings between
Defendant-Appellant and Cross-Appellee Gerald M. Sanchez
(**Husband**) and Plaintiff-Appellee and Cross-Appellant Betty Lou
Sanchez (**Wife**).  Husband appeals from the May 2, 2017 Divorce
Decree (**Divorce Decree**) and the October 12, 2017 "Order Granting
[Wife's] Motion for Reconsideration, Alteration or Amendment of
Divorce Decree Entered May 2, 2017 Filed Ex Officio May 10, 2017"
(**Order Granting Motion for Reconsideration**), both entered in the
Family Court of the Fifth Circuit (**Family Court**).[1]  Husband
contends that the Family Court erred in:  (1) denying him credit
for $418,000 in Category 1 and 3 contributions to the marital
estate, because of the creation of a marital trust; 2) deviating
from partnership principles, because of Husband's alleged
financial misconduct during the marriage; and 3) granting Wife's
post-judgment motion to amend the Divorce Decree five months
after the motion was filed.  Wife cross-appeals from the Divorce
Decree, contending that the Family Court erred in failing to

---

[1]	The Honorable Edmund D. Acoba presided.

award her post-divorce spousal support.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve the parties' contentions as follows.

## (1)  Category 1 and Category 3 Contributions

Husband contends that the Family Court erred in denying him credit for $418,000 in Category 1 and 3 contributions to the marital estate, "when [the court] presumed a gift of [two] properties to wife or the marital estate" based on the creation of the 2009 Sanchez Revocable Living Trust (**Trust**).  Husband maintains that he conveyed these separately-owned properties to the Trust "to placate Wife and provide for his four children to inherit the . . . properties," and he never intended to give the properties to Wife or the marital estate.

In divorce proceedings, marital property is divided according to partnership principles, which distinguish between property brought into the marriage and property acquired during the marriage, and which assign category values based on these considerations.  Gordon v. Gordon, 135 Hawaiʻi 340, 349, 350 P.3d 1008, 1017 (2015) (citing Tougas v. Tougas, 76 Hawaiʻi 19, 26, 868 P.2d 437, 444 (1994)).  Family courts use the following five categories of net market values (**NMV**) in dividing property:

> Category 1. The [NMV], plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
>
> Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DOCOEPOT [date of the conclusion of the evidentiary part of the trial].
>
> Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

> Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.
>
> Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

Selvage v. Moire, 139 Hawaiʻi 499, 507, 394 P.3d 729, 737 (2017) (citing Tougas, 76 Hawaiʻi at 27, 868 P.2d at 445).

"Each partner's individual contributions to the marriage, *i.e.*, the values of Category 1 and Category 3, are to be repaid to the contributing spouse absent equitable considerations justifying a deviation." Gordon, 135 Hawaiʻi at 349, 350 P.3d at 1017 (footnote omitted); see Selvage, 139 Hawaiʻi at 507, 394 P.3d at 737 ("The NMVs 'in Categories 1 and 3 are the parties' "capital contributions," and pursuant to general partnership law, they are returned to each spouse.'" (quoting Kakinami v. Kakinami, 127 Hawaiʻi 126, 138, 276 P.3d 695, 707 (2012)).

Here, Husband contends that the Family Court erred in denying him credit for Category 1 and Category 3 capital contributions to the marital estate. Specifically, in its December 7, 2017 Findings of Fact and Conclusions of Law (**FOFs/COLs**), the Family Court found, and neither party disputes, the following:

> **FOF 17** 5956 Kuamoo Road, 5990 Kuamoo Road and 210 Kamalu Road
>
> The real property located at 5956 Kuamoo Road, Kapaa, Kauai 96746 ("5956 Kuamoo Road") was separately owned by Defendant Husband on the DOM.
>
> The real property located at 210 Kamalu Road, Kapaa, Kauai 96746 ("210 Kamalu Road") was separately acquired by Defendant Husband by gift on April 7, 1992. . . .

Husband asked the Family Court to credit him for the Category 1 net market value of 5956 Kuamoo Road on the date of marriage, which was $125,000, and the Category 3 net market value of 210 Kamalu Road on the date of the gift, which was $292,000, for total contributions to the marital estate of $417,000.

Instead, the Family Court denied Husband credit for these asserted capital contributions on the ground that they had

been gifted by Husband to the parties and were thus Category 5 property. Specifically, in FOF 17, the Family Court made the following additional findings of fact (which are actually mixed findings of fact and conclusions of law) regarding the two properties:

> Both properties were subsequently gifted by Defendant Husband to the parties by creating a joint revocable trust [*i.e.*, the Trust].
>
> Both parties were the trustee of the Trust. Moreover, if one party was not alive or disabled or had resigned as Trustee, the other party would be Trustee.
>
> While both were alive and not disabled, distributions of income and principal would be made at their direction. If either of them was unable to so direct, distributions of income and principal could be made at the other's direction.
>
> Defendant Husband and Plaintiff Wife were both beneficiaries of the [T]rust. While either party was alive, both were entitled to distributions of income and principal from the Trust.
>
> The parties further reserved the power acting alone to revoke the Trust, to alter or amend the Trust in any manner and to withdraw from the Trust all or any portion of the trust assets.
>
> Defendant Husband claimed [sic] that he did not understand the trust document when he signed it is not credible because Defendant Husband made changes to the trust document in removing Plaintiff Wife's children as beneficiaries of the [T]rust.
>
> The [NMV] of 5956 Kuamoo Road is $259,548.73, while the NMV of 210 Kamalu Road is $781,740.24.

Based on these findings, the Family Court concluded in COL 11: "Both the real property located at 5956 Kuamoo Road . . . and the real property located at 210 Kamalu Road . . . are Category 5 properties." On this basis, the Family Court denied Husband credit for any Category 1 and 3 contributions to the marital estate, computed $1,041,288 in Category 5 real estate (*i.e.*, the sum of the NMVs of 5956 Kuamoo Road ($259,548.73) and 210 Kamalu Road ($781,740.24)), and divided that amount, among other amounts, between Husband and Wife in the Divorce Decree.

As set forth above, Category 1 marital partnership property includes property separately owned by one spouse on the date of marriage, but excludes the net market value attributable to property "that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party."

4

<u>Selvage</u>, 139 Hawaiʻi at 507, 394 P.3d at 737 (citing <u>Tougas</u>, 76 Hawaiʻi at 27, 868 P.2d at 445).  Similarly, Category 3 marital partnership property includes property separately acquired by gift during the marriage, but excludes the net market value attributable to property "that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party."  <u>Id.</u> (citing <u>Tougas</u>, 76 Hawaiʻi at 27, 868 P.2d at 445).  Thus, the issue here is whether the Family Court erred in finding that Husband gifted the two identified properties to the parties by creating the Trust.

This court has held:

> [W]hen one marital partner conveys Category 1 and/or Category 3 property to the other marital partner or to both marital partners, there is no presumption of a gift of Category 1 and/or Category 3 net market value (NMV) and the marital partner who alleges the gift has the burden of proving a gift.

<u>Wong v. Wong</u>, 87 Hawaiʻi 475, 482, 960 P.2d 145, 152 (App. 1998). "To constitute a gift, there must be: (1) donative intent; (2) delivery; and (3) acceptance."  <u>Hamilton v. Hamilton,</u> 138 Hawaiʻi 185, 204, 378 P.3d 901, 920 (2016) (citing <u>Tougas</u>, 76 Hawaiʻi at 27, 31, 868 P.2d at 445, 449).

In <u>Gussin v. Gussin</u>, 73 Haw. 470, 836 P.2d 484 (1992), the family court did not make any findings as to donative intent or any other issue bearing on whether the husband had gifted his separate property on the date of marriage to his wife or the marital estate.  <u>Id.</u> at 488, 836 P.2d at 493.  "Because the family court failed to make any findings as to donative intent or any other element bearing on whether a legal gift had been made," the supreme court concluded that this court "erred in not remanding the issue of gift for the family court to decide."  <u>Id.</u> at 489, 836 P.2d at 494; <u>see also</u> <u>Tougas</u>, 76 Hawaiʻi at 31, 868 P.2d at 449 ("In <u>Gussin</u>, failure by the family court to make any finding as to donative intent or any other element bearing on whether a legal gift had been made constituted grounds to remand the decision.")

Here, as in <u>Gussin</u>, the Family Court did not make findings on the elements of a legal gift, <u>i.e.</u>, (1) donative intent; (2) delivery; and (3) acceptance.  While some of the

findings in FOF 17 appear to bear on these elements, because the Family Court did not tie any of its findings regarding the provisions of the Trust to, for example, Husband's donative intent, it is unclear whether the Family Court found that in signing the Trust documents, Husband intended to gift the two properties at issue to Wife or the parties. Thus, without further findings from the Family Court, we are unable to meaningfully review the court's conclusions that the properties were gifted by Husband to the parties and were thus Category 5 properties. Accordingly, we vacate the Family Court's property division award, as reflected in the Divorce Decree and COL 11, relating to the division of 5956 Kuamoo Road and 210 Kamalu Road, and remand this case to the Family Court to make specific findings as to the elements of whether these two properties were a gift from Husband to Wife or the parties. See Gussin, 73 Haw. at 489, 836 P.2d at 494.

Given our conclusion, we do not reach the remaining issues raised by Husband regarding his contention that the Family Court erred in denying him credit for $418,000 in Category 1 and 3 contributions to the marital estate.

**(2)  Deviation from Partnership Principles**

Husband contends that the Family Court erred in deviating from partnership principles because of Husband's alleged financial misconduct, based on the transfer of cattle to his sons, during the marriage.

The partnership model requires the family court to: (1) find all facts necessary to categorize marital partnership property into one of the five categories identified above, and to assign the property the relevant net market values; (2) identify any equitable considerations justifying deviation from an equal distribution between the parties; (3) decide whether there will be a deviation; and (4) decide the extent of any deviation. Gordon, 135 Hawaiʻi at 350, 350 P.3d at 1018 (citing and quoting Jackson v. Jackson, 84 Hawaiʻi 319, 332, 933 P.2d 1353, 1366 (App. 1997)). To determine whether equitable considerations justify a deviation from the partnership model, a family court

6

must consider the following: "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." Id. at 352-53, 350 P.3d at 1020-21 (citing Hawaii Revised Statutes (**HRS**) § 580-47(a) (2006)); see also Hamilton, 138 Hawaiʻi at 206, 378 P.3d at 922. "Other than relative circumstances of the parties when they entered into the marital partnership and possible exceptional situations, . . . HRS § 580-47(a) requires the family court to focus on the present and the future, not the past." Gordon, 135 Hawaiʻi at 353, 350 P.3d at 1021 (quoting Jackson, 84 Hawaiʻi at 333, 933 P.2d at 1367). "In other words, deviation from the partnership model should be based primarily on the current and future economic needs of the parties rather than on punishing one party for financial misconduct." Id.

Here, the Family Court concluded in COL 16 that a "[v]alid and relevant consideration [(**VARC**)] exists to deviate from the partnership model." On this basis, the court further concluded and ordered:

> [I]n addition to Defendant Husband's equalization payment to Plaintiff Wife, Defendant Husband shall pay Plaintiff Wife an additional ONE HUNDRED TWO THOUSAND TWO HUNDRED NINETY-THREE AND 31/100 DOLLARS ($102,293.31) for one-half of the total value of the cattle that Defendant Husband transferred to his children, or a total of EIGHT HUNDRED TEN THOUSAND FIVE HUNDRED THIRTEEN AND 85/100 DOLLARS ($810,513.85).

In reaching these conclusions, the Family Court made the following findings of fact:

> **FOF 22** Valid And Relevant Consideration
>
> In 2012 Defendant Husband gave away approximately 247 heads of cattle to his children in anticipation of divorce. Plaintiff Wife found out about the gift during Defendant Husband's deposition in 2014. The average value per head of cattle sold in 2012 was $828.29. Thus, total value of the cattle that Defendant Husband transferred to his children was $204,587.63.

Relying on Gordon, Husband argues that his alleged financial misconduct during the marriage "should not have been considered by the family court when deciding whether to deviate from an equal division of marital partnership property in the

absence of a finding of extraordinary circumstances." 135 Hawai'i at 353, 350 P.3d at 1021. Wife, on the other hand, argues that extraordinary financial misconduct during the marriage may be the basis for equitable deviation, and that Husband's transfer of cattle to his children in 2012 constituted extraordinary financial misconduct.

The Family Court, however, did not make "a finding of extraordinary circumstances" in connection with Husband's transfer of cattle to his children. Gordon, 135 Hawai'i at 353, 350 P.3d at 1021. Absent such a finding, Husband's alleged financial misconduct should not have been considered by the Family Court in deciding to deviate from partnership principles. Id. Deviation based on this consideration improperly focused on the parties' past and on punishing Husband for his alleged misconduct. See id.; see also Selvage, 139 Hawai'i at 511, 394 P.3d at 741 ("[the family court] cannot punish a party for misconduct when deciding whether deviation from the partnership model is appropriate.") Accordingly, the Family Court's conclusion that Husband's 2012 transfer of cattle to his children constituted a VARC authorizing a deviation from the partnership model, as stated in COL No. 16, is wrong. The Family Court thus abused its discretion in relying on this factor as a VARC to justify such deviation and to order Husband to pay Wife an additional $102,293 for one-half of the total value of the cattle that Husband transferred to his children.[2] See Gordon, 135 Hawai'i at 353, 350 P.3d at 1021.

Given our conclusion, we do not reach the remaining issues raised by Husband regarding his contention that the Family Court erred in deviating from partnership principles.

---

[2] We note that in Gordon, the Hawai'i Supreme Court distinguished the doctrine of dissipation of marital assets described in Higashi v. Higashi, 106 Hawai'i 228, 241, 103 P.3d 388, 401 (App. 2004), from the deviation from partnership principles based on equitable considerations described in Jackson, 84 Hawai'i at 332, 933 P.2d at 1366. See Gordon, 135 Hawai'i at 352, 350 P.3d at 1020. "Although financial misconduct is not a proper consideration in determining a deviation from partnership principles in the absence of a finding of exceptional circumstances, our law does allow a court to charge a divorcing party for marital waste during the pendency of a divorce[.]" Id. at 353-354, 350 P.3d at 1021-22. Here, the Family Court made no finding that Husband committed marital waste during the pendency of the divorce.

**(3)  Order Granting Motion for Reconsideration**

On May 10, 2017, Wife filed "[Wife's] Motion for Reconsideration, Alteration or Amendment of Divorce Decree Entered May 2, 2017" (**Motion for Reconsideration**), seeking an order that Husband reimburse her in the amount of $18,532 for taxes she paid on pre-trial spousal support.  On October 12, 2017, the Family Court entered the Order Granting Motion for Reconsideration.

Husband contends that pursuant to Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(a)(3), the Motion for Reconsideration was deemed denied 90 days after it was filed, and therefore, the Family Court lacked jurisdiction to later enter the Order Granting Motion for Reconsideration.

It is undisputed that Wife's post-judgment Motion for Reconsideration was a tolling motion pursuant to HRAP Rule 4(a)(3).  HRAP Rule 4(a) (2020) provides, in relevant part:

> **Rule 4.    APPEALS - WHEN TAKEN.**
>
> **(a)  Appeals in civil cases.**
>
> (1)  TIME FOR FILING.  When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order.
>
> . . . .
>
> (2)  PREMATURE FILING OF APPEAL.  If a notice of appeal is filed after announcement of a decision but before entry of the judgment or order, such notice shall be considered as filed immediately after the time the judgment or order becomes final for the purpose of appeal.
>
> (3)  TIME TO APPEAL AFFECTED BY POST-JUDGMENT MOTIONS.  If any party files a timely motion for judgment as a matter of law, to amend findings or make additional findings, for a new trial, to reconsider, alter or amend the judgment or order, or for attorney's fees or costs, and court or agency rules specify the time by which the motion shall be filed, then the time for filing the notice of appeal is extended for all parties until 30 days after entry of an order disposing of the motion.  <u>The presiding court or agency in which the motion was filed shall dispose of any such post-judgment motion by entering an order upon the record within 90 days after the date the motion was filed.  If the court or agency fails to enter an order on the record, then, within 5 days after the 90th day, the clerk of the relevant court or agency shall notify the parties that, by operation of this Rule, the post-judgment motion is denied and that any orders entered thereafter shall be a nullity.  The time of appeal shall run from the date of entry of the court or agency's order disposing of the post-judgment motion, if the order is entered within the 90 days, or from the filing date of the</u>

> clerk's notice to the parties that the post-judgment motion is denied pursuant to the operation of the Rule.
>
> The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order.
>
> The 90-day period shall be computed as provided in Rule 26 of these Rules.
>
> . . . .
>
> (5) ENTRY OF JUDGMENT OR ORDER DEFINED. A judgment or order is entered when it is filed in the office of the clerk of the court.

(Emphasis added.)

Husband filed a notice of appeal from the Divorce Decree on May 11, 2017, and Wife filed a notice of cross-appeal from the Divorce Decree on May 30, 2017.

Pursuant to HRAP Rule 4(a)(3), the Family Court was required to dispose of the Motion for Reconsideration by entering an order by the end of the day on August 8, 2017, the ninetieth day after the Motion for Reconsideration was filed. The Family Court failed to do so. As discussed below, prior to the 2016 amendment to HRAP Rule 4(a)(3), the failure of a trial court to enter an order within 90 days constituted a denial of such a post-judgment motion, *i.e.*, the motion was deemed denied.[3]

---

[3] In 2016, HRAP Rule 4(a)(3) was amended as follows (deleted material is bracketed and stricken; new material is underscored):

> (3) TIME TO APPEAL AFFECTED BY POST-JUDGMENT MOTIONS. If any party files a timely motion for judgment as a matter of law, to amend findings or make additional findings, for a new trial, to reconsider, alter or amend the judgment or order, or for attorney's fees or costs, and court or agency rules specify the time by which the motion shall be filed, then the time for filing the notice of appeal is extended for all parties until 30 days after entry of an order disposing of the motion. [; provided, that the failure] The presiding court or agency in which the motion was filed shall [to] dispose of any such post-judgment motion by entering an order [entered] upon the record within 90 days after the date the motion was filed [shall constitute a denial of the motion]. If the court or agency fails to enter an order on the record, then, within 5 days after the 90th day, the clerk of the relevant court or agency shall notify the parties that, by operation of this Rule, the post-judgment motion is denied and that any orders entered thereafter shall be a nullity. The time of appeal shall run from the date of entry of the court or agency's order disposing of the post-judgment motion, if the order is entered within the 90 days, or from the filing date of the clerk's notice to

continued . . .

In <u>Ass'n of Condo. Homeowners of Tropics at Waikele v. Sakuma</u>, 131 Hawaiʻi 254, 318 P.3d 94 (2013), as clarified by <u>Deutsche Bank Nat. Trust Co. v Amasol</u>, 135 Hawaiʻi 357, 351 P.3d 584 (2015), the Hawaiʻi Supreme Court held that the deadline for filing a notice of appeal, stemming from a (pre-2016-amended) HRAP Rule 4(a)(3) "deemed denial" of a timely post-judgment tolling motion, was not triggered until the filing of an order disposing of such motion.

Prior to the supreme court's ruling in <u>Sakuma</u>, the Intermediate Court of Appeals interpreted HRAP Rule 4(a)(3) consistent with Justice Nakayama's dissent in <u>Sakuma</u>, 131 Hawaiʻi at 256-57, 381 P.3d at 96-97, and her concurring and dissenting opinion in <u>Amasol</u>, 135 Hawaiʻi at 360-61, 351 P.3d at 587-88, opining that the deemed denial of a post-judgment tolling motion, resulting from a trial court's failure to enter an order by the ninetieth day, triggered the 30-day deadline for filing an appeal.  Problems with the supreme court's interpretation of the pre-2016 version of HRAP Rule 4(a)(3) in <u>Sakuma</u>/<u>Amasol</u>, as articulated by Justice Nakayama in <u>Amasol</u>, included that it "[led] to the impracticable result that long periods of time could pass before a motion that has been deemed denied becomes appealable, and the finality of cases may be delayed indefinitely."  <u>Amasol</u>, 135 Hawaiʻi at 361, 351 P.3d at 588. However, as Chief Justice Recktenwald pointed out in his concurring opinion in <u>Amasol</u>, 135 Hawaiʻi at 359-60, 351 P.3d at 586-87, although Justice Nakayama "raised strong arguments in support of a contrary result, those arguments did not prevail"

---

. . . continued

        <u>the parties that the post-judgment motion is denied pursuant to the operation of the Rule.</u>

        The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order.

        The 90-day period shall be computed as provided in Rule 26 of these Rules.

<u>Order Amending Rule 4 of the Hawaiʻi Rules of Appellate Procedure</u>, SCRU-10-0000012 (Haw. Mar. 7, 2016) (**2016 Order Amending Rule 4**).

and addressing the matter through a rule amendment would be a better course of action than overruling <u>Sakuma</u>.

The 2016 amendment to HRAP Rule 4(a)(3) addressed the delayed entry of a written order on a post-judgment tolling motion somewhat differently. The 2016 amendment maintained the requirement that the trial judge enter an order disposing of such motion within 90 days after the motion was filed, but deleted the operative language stating that the failure to do so constituted a deemed denial of the motion. <u>See</u> 2016 Order Amending Rule 4 ("[~~, provided, that the failure~~] <u>The presiding court or agency in which the motion was filed shall</u> [~~to~~] dispose of any <u>such post-judgment</u> motion by <u>entering an</u> order [<u>entered</u>] upon the record within 90 days after the date the motion was filed ~~[shall constitute a denial of the motion~~]."). Instead, the 2016 Order Amending Rule 4 added a <u>new</u> trigger for a "deemed denial" of a post-judgment tolling motion, *i.e.*, notification from the clerk of the court (or agency) that by operation of HRAP Rule 4(a)(3), the post-judgment motion is denied and subsequent orders are a nullity. <u>See</u> 2016 Order Amending Rule 4 ("<u>If the court or agency fails to enter an order on the record, then, within 5 days after the 90th day, the clerk of the relevant court or agency shall notify the parties that, by operation of this Rule, the post-judgment motion is denied and that any orders entered thereafter shall be a nullity.</u>"). This procedure clearly dispenses with the <u>Sakuma</u>/<u>Amasol</u> requirement that the trial court enter a further order at some further point in time by providing that any orders entered after the clerk's notification are a nullity. However, the deemed denial and the nullification of future orders stem not just from the trial court's failure to timely take action, but from two steps: (1) the trial court's failure to enter an order disposing of a timely-filed post-judgment tolling motion; *and* (2) the clerk of the court's notification to the parties that the post-judgment motion is deemed denied by operation of the rule and that any orders entered thereafter shall be a nullity.

This interpretation is supported by the next sentence of HRAP Rule 4(a)(3), which sets forth alternative deadlines for

the filing of a notice of appeal, which was added as part of the 2016 amendment to the rule:

> The time of appeal shall run from the date of entry of the court or agency's order disposing of the post-judgment motion, if the order is entered within the 90 days, or from the filing date of the clerk's notice to the parties that the post-judgment motion is denied pursuant to the operation of the Rule.

Thus, if a trial court enters an order within 90 days of a timely-filed post-judgment, the notice of appeal must be filed within 30 days after the entry of that order. However, if the trial court fails to do so, it is the clerk's notice that effectuates the denial of the motion and the 30-day deadline for filing the notice of appeal, as well as the nullification of any subsequent orders.

In the case at bar, however, the Family Court failed to enter an order within 90 days *and* the clerk of the court failed to send the required notification to the parties that the Motion for Reconsideration is deemed denied by operation of the rule and that any orders entered thereafter shall be a nullity. HRAP Rule 4(a)(3) does not contemplate this dual failure of both the court and the court's clerk to execute the requirements of the rule.

Husband's interpretation of HRAP Rule 4(a)(3), as "automatically" deeming the Motion for Reconsideration as being denied 90 days after it was filed, renders superfluous the requirement that the clerk provide notice to the parties of the deemed denial. In the circumstances of this case, such an interpretation would unfairly disadvantage Wife, essentially telling her that she would have had to appeal the deemed denial of a motion that the Family Court purportedly granted, despite not receiving the notice required by the rule. In addition, Husband's interpretation would nullify the subsequently-filed Order Granting Motion for Reconsideration without authority to do so, as the rule provides that "any order entered thereafter[,]" *i.e.*, entered after the clerk's notice to the parties, "shall be a nullity." Under the proper reading of HRAP Rule 4(a)(3), under

13

the circumstances of this case, the Order Granting the Motion for Reconsideration was not nullified.[4/]

Husband's May 11, 2017 Notice of Appeal is deemed to appeal the disposition of the Motion for Reconsideration, *i.e.*, the Order Granting the Motion for Reconsideration. See HRAP Rule 4(a)(3) ("The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order."). However, Husband's only argument on appeal is that the Family Court lacked jurisdiction to grant the Motion for Reconsideration pursuant to HRAP Rule 4(a)(3). Having no other argument before us, we affirm the Order Granting Motion for Reconsideration.

**(4) Post-Divorce Spousal Support**

In Wife's cross-appeal, she argues that the Family Court erred in failing to award her post-divorce spousal support. She challenges COL 4, which states:

> **COL 4** Alimony
>
> After considering the factors in Hawaii Revised Statutes Section 580-47 especially considering the parties' ages, their physical health, the duration of the marriage, needs of the parties, the financial condition in which the parties will be left as the result of this divorce action, no alimony will be awarded.

According to Wife, the Family Court abused its discretion in failing to award post-divorce spousal support because it "failed to consider the most relevant factual questions" and "because its decision clearly exceeded the bounds of reason."

We are vacating in part the Family Court's property division award. As any need for spousal support will be related to the property division, we also vacate the Family Court's decision denying Wife an award of post-divorce spousal support.

---

[4/] We note that in her answering brief, "Wife concedes that, pursuant to [HRAP Rule] 4([a])(3), Wife's Motion for Reconsideration . . . was deemed denied as a result of the Family Court's failure to enter an order on the record within 90 days after Wife's Motion for Reconsideration was filed." However, we are "not bound by a party's 'apparent concession of law.'" Umberger v. Dep't of Land & Nat. Res., 140 Hawaiʻi 500, 520, n.38, 403 P.3d 277, 297 n.38 (2017) (quoting Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc., 115 Hawaiʻi 232, 254, 167 P.3d 225, 247 (2007)).

14

See Hamilton, 138 Hawai'i at 209, 378 P.3d at 925.   On remand, the Family Court should consider whether any changes in its property division award impact its decision regarding spousal support, in light of the criteria and factors set out in HRS § 580-47(a).   See id.; JZ v. JZ, No. CAAP-19-0000496, 2020 WL 257558, at *20 (Haw. App. May 21, 2020) (Mem.).

**(5) Conclusion**

For these reasons, we: (1) vacate the Family Court's property division award, as reflected in the Divorce Decree and COL 11, relating to the division of 5956 Kuamoo Road and 210 Kamalu Road, and remand this case to the Family Court to make specific findings as to the elements of whether these two properties were a gift from Husband to Wife or the parties; (2) vacate the Family Court's property division award, as reflected in the Divorce Decree and COL 16, relating to the Family Court's conclusion that Husband's 2012 transfer of cattle to his children constituted a VARC authorizing a deviation from the partnership model; (3) affirm the October 12, 2017 "Order Granting [Wife's] Motion for Reconsideration, Alteration or Amendment of Divorce Decree Entered May 2, 2017 Filed Ex Officio May 10, 2017"; and (4) vacate the Family Court's decision denying Wife an award of post-divorce spousal support, as reflected in the Divorce Decree and COL 4, and remand for the Family Court to consider whether any changes in its property division award impact its decision regarding spousal support, in light of the criteria and factors set out in HRS § 580-47(a).

DATED:  Honolulu, Hawai'i, October 13, 2021.


On the briefs:                          /s/ Katherine G. Leonard
                                        Presiding Judge
Peter Van Name Esser
for Defendant-Appellant/
Cross-Appellee.                         /s/ Clyde J. Wadsworth
                                        Associate Judge
Ronald P. Tongg
(Tongg and Tongg)
for Plaintiff-Appellee/                 /s/ Karen T. Nakasone
Cross Appellant.                        Associate Judge